FRAZIER, Theodore M., Johnson, Harold J., Russell, Essie, Brown, James, Miller, Thomas C., Cook, James E., Fullard, Patricia, Elliott, Julia and Williams, Orlando J., individually and on behalf of all other persons similarly situated

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and Transport Workers Union of Philadelphia, Local # 234.

Appeal of Theodore M. FRAZIER, Harold J. Johnson, Essie Russell, James Brown, Thomas C. Miller, James E. Cook, Patricia Fullard, Julia Elliott, and Orlando J. Williams.

No. 85–1338.

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 1986.

Decided March 4, 1986.

Michael Churchill (argued), Public Interest Law Center of Philadelphia, Philadelphia, Pa., for appellants.

Margery Sickles Preddy, James F. Kilcur, Southeastern Pennsylvania Transp.

Authority, Philadelphia, Pa., for appellee Southeastern Pennsylvania Transp. Authority; Saul H. Krenzel (argued), Philadelphia, Pa., of counsel.

Gail Lopez-Henriquez (argued), Freedman & Lorry, P.C., Philadelphia, Pa., for appellee Transport Workers' Union of Philadelphia, Local 234.

Before ADAMS, SLOVITER and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal raises important questions concerning the application of this Circuit's requirement that civil rights plaintiffs plead specific facts in their complaints. Because we conclude that the district court misapplied the specificity doctrine in dismissing some of the counts in the complaint, although it did not err in dismissing others, we vacate and remand for further proceedings.

### I.

On July 20, 1984, nine present and former employees of the Southeastern Pennsylvania Transportation Authority (SEPTA) filed a class action suit alleging that SEPTA had discriminated against black employees in hiring, promotions, job assignments and disciplinary practices. The complaint also included a charge of sexual harassment. It asserted violations of 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986(1982) as well as a state law claim. In addition to SEPTA, Transport Workers Union of Philadelphia, Local 234, was also named as a defendant. It was charged with conspiring with the employer to deprive the plaintiffs of their civil rights.

On their own initiative, the plaintiffs twice amended the complaint. The defendants challenged the second amended complaint as insufficiently specific, and on December 20, 1984, the district court agreed,

directing the plaintiffs to amend their complaint to allege more facts or else face dismissal. Plaintiffs then submitted a third amended complaint, but on April 26, 1985, the district court ruled that the third amended complaint still lacked the required specificity. Declining to allow further amendments and noting that plaintiffs were represented by counsel, it dismissed the suit. Plaintiffs filed a timely appeal.[1]

### II.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." It must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Generally, the allegations of the complaint are to be construed favorably to the pleader; the accepted rule is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–02 (footnote omitted)).

This standard represents a significant departure from the pleading criteria in effect prior to the adoption of the federal rules in 1937. At common law, litigants faced a myriad of highly technical pleading requirements. Proponents insisted on the system's " 'matchless precision,' " Note, *Common Law Pleadings*, 10 Harv.L.Rev. 238 (1896), but "[i]t also proved to be wonderfully slow, expensive, and unworkable," and "was better calculated to vindicate scientific rules of pleading than it was to dispense justice." 5 Wright & Miller, Federal Practice & Procedure § 1202, at 60 (1985). The late 19th Century trend to-

---

**1.** Plaintiffs do not appeal the dismissal of their claims based on §§ 1985 and 1986; we thus consider only their allegations under §§ 1981 and in connection with 1983 and the state law claim.

ward codification replaced common law pleading with "code pleading," which required pleadings to state the "dry, naked actual facts," Pomeroy, Code Remedies § 423, at 640 (5th ed. 1929) (quoted in Wright & Miller, *supra*, § 1202, at 62 n. 17), as opposed to "conclusions" or "evidence." This system proved no more efficient.

Abandoning such fine distinctions as well as the hypertechnicality of the common law, the federal rules established in Rule 8 a simplified standard that imposed minimal burdens on the plaintiff at the pleading stage, and allowed "great generality" in stating the basis of the pleader's claim. Wright & Miller, § 1202, at 64. Fearful of being deluged by questionable claims asserted under the civil rights acts, however, this Court in civil rights cases appears to be modifying the standard of specificity required by the federal rules when it dismisses complaints that are "broad and conclusory" and fail "to state facts in support of their conclusions." *Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir.1967). In *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 923 (3d Cir.1976), we declared that the specificity requirement was intended to weed out at an early stage frivolous claims and those that should be heard in state court.[2] Later in *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir.1978), we supplied an additional rationale for the requirement, suggesting that it is designed to provide

the defendant with sufficient notice of the claims asserted. *See also United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir.1980).[3]

In *Rotolo*, the plaintiff filed suit under section 1983 after losing his job as a borough building inspector. His complaint stated only that he had been employed by the borough, that four councilmen had voted to dismiss him, and that they had done so because he "had exercised his First Amendment privileges under the Constitution of the United States." *Id.* at 921. He did not allege what he had said in exercising his first amendment right, when and where he had said it, or indeed even if his claimed exercise of the First Amendment right involved speech or some other protected activity. Accordingly, we held it was "impossible to determine if indeed his activity was the sort afforded protection under the first amendment and whether it had any relevance to the termination of his employment." *Id.* at 923.

By way of contrast, this Court in *Hall* reversed a district court judgment that had dismissed a complaint on the basis of *Rotolo*. A bank customer, Hall, had sued the Pennsylvania State Police, its commissioner, other state officials, and a bank. He charged that at the state's urging a directive had been issued to banks to photograph suspicious black males. We noted that "the plaintiff has alleged the conduct violating his rights (racially discriminatory

---

**2.** The rule articulated by the Court appears to have been based on the proposition that claimants employing civil rights statutes are more likely to bring frivolous lawsuits than other federal plaintiffs. The *Rotolo* Court, quoting approvingly from *Valley v. Maule*, 297 F.Supp. 958, 960 (D.Conn.1968), stated that "[i]n recent years there has been an increasingly large volume of cases brought under the Civil Rights Act. A substantial number of these are frivolous or should be litigated in state court." *Rotolo*, 532 F.2d at 922. The empirical support for this proposition has been questioned, as has the doctrinal basis for imposing a special pleading burden on civil rights plaintiffs. *See Rotolo*, 532 F.2d at 927 (Gibbons, J.; dissenting). Some courts in this Circuit, in considering the sufficiency of civil rights complaints, have applied the customary Rule 8 pleading standard without mentioning *Rotolo*. *See Estate of Bailey v.*

*County of York*, 768 F.2d 503, 506 (3d Cir.1985); *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168, 1170 (3d Cir.1978); *Helstoski v. Goldstein*, 552 F.2d 564, 565 (3d Cir.1977) (per curiam).

**3.** Where a plaintiff is proceeding without counsel, the specificity requirement is enforced more leniently. In *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam), the Supreme Court stated that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers." While we have suggested that the specificity requirement may apply to unrepresented defendants even after *Haines, see Rotolo*, 532 F.2d at 922 (dictum), *Haines* requires courts to take into account a defendant's *pro se* status as a factor in evaluating the adequacy of the complaint.

activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials)." *Id.* at 89. Thus, we said, the complaint "is sufficiently precise to give notice of the claims asserted." *Id. See also Boykins v. Ambridge Area School District,* 621 F.2d 75, 80 (3d Cir.1980) (complaint sufficiently specific where it states discriminatory conduct complained of, times and places of the conduct and the persons responsible).

These decisions provide useful guidance, but they do not set out a bright-line rule governing the application of the specificity requirement in civil rights cases. Inevitably, the sufficiency of a complaint must be determined on a case-by-case basis. The factors discussed in prior decisions are helpful to a court making such an evaluation, but they must be considered in light of the purposes of the specificity rule. Thus, the crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer. At the same time, however, a court cannot expect a complaint to provide proof of plaintiffs' claims, nor a proffer of all available evidence. In civil rights cases, especially class actions, much of the evidence can be developed only through discovery. While plaintiffs may be expected to know the injuries they allegedly have suffered, it is not reasonable to expect them to be familiar at the complaint stage with the full range of the defendants' practices under challenge.

### III.

In the case at hand, the district court held that all of the plaintiffs' factual allegations were broad and conclusory, and dismissed the suit under *Rotolo.* We conclude, however, that it was error to reject the entire complaint.

■ In Count I, the complaint sets forth a series of acts and practices by SEPTA which discriminate against the plaintiffs on the basis of race, in violation of § 1981. Most of these allegations are quite broad.

Paragraphs 18(a) and (c) are typical; they accuse the defendants of:

a) Following assignment and transfer seniority practices which tend to perpetuate and maintain the racial identity of the departments, groups and job classifications, and which tend to deny equal employment opportunities to plaintiffs....

c) Failing to provide Plaintiffs with opportunities to be transferred or to be promoted to more desirable and better paying jobs under the same terms, conditions and privileges as white employees have been transferred, promoted and initially assigned to much more desirable and better paying jobs....

App. at 152–53. From this information alone, the defendants could gain little or no idea what the factual basis for the claim against them is. These counts allege the conduct complained of in only the broadest terms, and do not state when or where this conduct occurred. Thus the court was correct to dismiss them.

■ Paragraph 18(d) of the complaint, presents a different question, however. It charges the defendants with:

d) Imposing unnecessarily harsh disciplining actions against Blacks for various infractions that are not imposed upon white employees for similar or more serious infractions, such as the firing of Harold Johnson and James Brown for purportedly failing to follow emergency procedures while similar incidents involving white employees resulted in no or minor disciplinary action, the firing of Essie Russell for reporting to the medical department on her day off in [sic] while under medication and being deemed in a condition unsatisfactory to medical, i.e. being under the influence of alcohol or drugs, the firing of Patricia Fullard because her excuse of sickness was not acceptable, and by placing write-ups in their personnel file which are cumulatively reviewed and deemed to reflect an overall poor work performance, though there would have not been any warning or indication that their record

would justify the next infraction resulting in termination of employment.... App. at 154.

The district court found paragraph 18(d) flawed because it "fails to disclose what the similar incidents were and fails to establish the severity of the discipline or the relation in time the incidents took place. Without more detail, it is impossible to determine if, in fact, the incidents were similar and whether the severity of the punishment was different." App. at 212.

This ruling extends beyond the requirements of *Rotolo*. By reading paragraph 18(d), SEPTA can readily discern the nature of the claim. Although the paragraph does not state precisely when and where the firings took place, SEPTA's personnel files undoubtedly will reveal the dates of the disciplinary actions and the officials responsible—the vital information needed to understand what the claim is about and how to answer it. Moreover, this allegation is sufficient to ensure that the claim belongs in federal court and is not frivolous within the meaning of *Rotolo*. The complaint in *Rotolo* was inadequate because the plaintiff did not in any way explain what had been done to him that transgressed the Constitution. Here, by contrast, the plaintiffs have alleged with specificity the deprivation that they suffered, and have claimed that white employees were treated less harshly, an action which, if proven, violates federal law. To require more, as the district court did, is to insist that they prove the disparate treatment at the complaint stage. Such a rule would impose a barrier to class actions for which neither Rule 8 nor the purposes of the *Rotolo* doctrine provides authority. We

therefore hold that paragraph 18(d) of the complaint is sufficiently specific to comply with *Rotolo*.[4]

Count II of the complaint, based on the identical facts alleged in support of Count I, avers that the practices set out also deprive the plaintiffs of their right to make and enforce employment contracts in violation of §§ 1981 and 1983. Because paragraph 18(d) of Count I is sufficiently specific, we also hold that Count II, to the extent it relies on the facts in this paragraph, may be maintained consistent with *Rotolo*.

Counts III and V allege violations of §§ 1981 and 1983 by the union. We conclude that they were properly dismissed, because they are not adequately specific to provide the union with reasonable notice. Paragraph 22(c) of Count III is illustrative. It states that the union, in conspiracy with SEPTA, "[f]ailed to effectively process grievances for black persons pursuant to their duty to fairly represent on the same basis as grievances for white persons were processed...." However, it does not enumerate any grievances that were filed, nor does it identify the nature of the alleged conspiracy with SEPTA. Plaintiffs' inability, on their third attempt, to identify one grievance actually filed, suggests that these claims are frivolous. Counts III and V, then, failed to comply with *Rotolo*.[5]

Count IV alleged certain torts, including harrassment and invasion of privacy. The trial court dismissed these pendent state claims because his dismissal of all of the civil rights counts deprived the court of jurisdiction to hear them. Because we are

---

**4.** The district court also noted that in order to recover under § 1981, the plaintiffs must establish intentional discrimination by the defendants, apparently implying that the complaint did not allege intent. However, paragraph 19 of the complaint charged that all of the acts alleged "were intentionally done by SEPTA in violation of plaintiffs' statutory and constitutional rights...." App. at 156. This satisfies the intent requirement.

**5.** The lack of specific facts supporting the claim that the union conspired with the public author-

ity would in itself require dismissal of the § 1983 claim. *See Darr v. Wolfe,* 767 F.2d 79 (3d Cir.1985) (claim that a private defendant conspired with a state actor must be supported by specific facts). Unlike § 1983, § 1981 applies to private as well as state actors, and thus the plaintiffs need not show that the union conspired with a public entity to establish a § 1981 claim. However, even absent a state action requirement, the complaint under § 1981 against the union is not sufficient because of the lack of specificity.

allowing certain of the federal claims to proceed, we will also reinstate this count.

Finally, Count VI avers that the female plaintiffs were subjected to sexual harrassment in violation of §§ 1981 and 1983. This count identifies by name one of the plaintiffs who allegedly submitted to her supervisors' advances and was promoted as a result. It adds that when she "began rejecting the advances made by her general foreman and others, the promotions ceased, she started to get write-ups in her file and she was eventually terminated." App. at 160. While the complaint does not state the names of the supervisors, *see Boddorff v. Publicker Industries, Inc.*, 488 F.Supp. 1107 (E.D.Pa.1980), that information should also be available from SEPTA's records, as should the dates of the plaintiff's promotions and the critical evaluations, or "write-ups," in her file. While it would have been helpful to include such information in the complaint, this count does provide SEPTA with sufficient notice, and alleges sufficient facts to survive challenge under *Rotolo*.

To summarize, then, we conclude that Counts I and II, insofar as they rest on facts set forth in paragraph 18(d), and Counts IV and VI, are pleaded against SEPTA with sufficient specificity; Counts III and V against the union, however, were properly dismissed as broad and conclusory.[6]

The judgment of the district court will be vacated, and the case remanded for further proceedings consistent with this opinion.

---

6. *Rotolo* directs district courts to allow "liberal amendment" of civil rights claims rejected as lacking in specificity. 532 F.2d at 923. *See also Kauffman v. Moss,* 420 F.2d 1270, 1276 (3d Cir.1970). Here the district court gave the plaintiffs an opportunity to amend their complaint, which had previously been amended twice. Thus, with respect to those counts that were insufficiently specific, the district court did not err in dismissing the complaint rather than directing the plaintiffs to amend again.