795 F.2d 310
 41 Fair Empl.Prac.Cas. 273,
40 Empl. Prac. Dec. P 36,251
DISTRICT COUNCIL 47, AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO by its trustees
ad litem CRONIN, Thomas Paine and Bell,
Joann; Muldrow, Marshall;
Walker, Herman
v.
BRADLEY, Honorable Edward J., President Judge, Court of
Common Pleas of Philadelphia; Takiff, Honorable Harry A.,
Court Administrator, Adult Court, Court of Common Pleas of
Philadelphia; Cipriani, Nicholas, Administrative Judge,
Family Court, Court of Common Pleas of Philadelphia; Teti,
Joseph, Deputy Court Administrator, Adult Court, Court of
Common Pleas of Philadelphia; Rosengarten, Dr. Leonard,
Deputy Court Administrator, Family Division, Court of Common
Pleas of Philadelphia.
Appeal of DISTRICT COUNCIL 47, AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO by its
trustees ad litem Thomas Paine CRONIN
and Joann Bell; Marshall
Muldrow; and Herman Walker.
 No. 85-1534.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
June 2, 1986.
 Decided July 9, 1986.
 
 Lee W. Jackson, Kirschner, Walters, Willig, Weinberg & Dempsey, Philadelphia, Pa., William L. Robinson, Samuel Issacharoff, Lawyers' Committee for Civil Rights Under the Law, Washington, D.C., for appellants.
 Warren M. Laddon, Annemiek N. Young, Philadelphia, Pa., for appellees.
 Before ALDISERT, Chief Judge, and GARTH and SLOVITER, Circuit Judges
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 I.
 
 1
 On April 15, 1985, plaintiff/appellants District Council 47 of the American Federation of State, County and Municipal Employees (District Council 47) and two representative plaintiffs filed a class action on behalf of black probation officers against defendant/appellees, judges and administrators f the Philadelphia Court of Common Pleas.[1] District Council 47 alleged that the black employees had been victims of a discriminatory promotional examination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. and of their right to due process as guaranteed by the Fourteenth Amendment of the United States Constitution.
 
 
 2
 In Counts I and II, District Council 47 alleged that "on or about November 7 or 8, 1984, promotional examinations were administered by the Court of Common Pleas of Philadelphia and McCann Associates" for the positions of Probation Officer Supervisors grades 3, 4 and 5 in the Family and Adult Divisions of the Court of Common Pleas. Complaint, p p 16-17, app. 7. Those examinations allegedly had a disparate impact upon black applicants since the pass rates for blacks were significantly lower than those for whites in the various grades tested.
 
 
 3
 Further, District Council 47 alleged that average black scores were less than 80% of average white scores, "in violation of the EEOC Four-fifths Rule", and that the examination, prepared by McCann Associates under contract to the Court of Common Pleas, had never been the subject of an impartial professional validity study to determine whether its results correlated with future performance in the particular jobs tested. Accordingly, District Council 47 alleged that the Court's administration of the examination violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Sec. 1983.
 
 
 4
 In Count III of the complaint, District Council 47 alleged that by specifically incorporating by reference the applicable federal statutes, rules and regulations prohibiting discriminatory examinations, the collective bargaining agreement which was executed between AFSCME and the Court of Common Pleas created "cognizable property and liberty interests secured by the Fifth and Fourteenth Amendments of the United States Constitution," thus benefiting the plaintiffs. Therefore, the discriminatory promotional examinations administered by the defendants constituted a "deprivation of [those] property and liberty interests without due process of law". Complaint, paragraphs 44-47, app. 13.
 
 
 5
 In Count IV, District Council 47 alleged that the Court's personnel regulations requiring that all promotions be in conformity with the rules and regulations established by the Equal Employment Opportunity Commission "created cognizable property and liberty interests for its employees in non-discriminatory promotional opportunity." Therefore, plaintiffs asserted that the Court's administration of the allegedly discriminatory test constituted a deprivation of those liberty and property interests without due process of law as guaranteed by the Fifth and Fourteenth Amendments in violation of 42 U.S.C. Sec. 1983. Complaint paragraphs 49-53, app. 14-15.
 
 
 6
 On May 3, 1985, the defendants filed a motion to dismiss the complaint on the grounds of 1) lack of subject matter jurisdiction, 2) failure to state a claim upon which relief could be granted and 3) lack of standing of District Council 47 as the representative of the plaintiff class.
 
 
 7
 On August 15, 1985, 619 F.Supp. 381, the district court dismissed the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Regarding plaintiffs' Title VII claim (Count I), the court ruled that plaintiffs' failure to exhaust their administrative remedies by filing charges of discrimination with the appropriate state agency or the EEOC required dismissal of their federal cause of action.
 
 
 8
 The district court dismissed plaintiffs' Section 1983 claims (Counts II, III and IV), on the grounds that
 
 
 9
 the complaint in this case is wholly lacking in specific facts to support its claim that the named defendants were responsible for the drafting or implementation of the alleged discriminatory examinations.
 
 
 10
 District Court op. at app. 118.
 
 
 11
 The court further held that to the extent liability of the named defendants was premised upon theories of vicarious liability or respondeat superior, the complaint likewise was defective since a complaint under section 1983 "must allege direct, personal involvement by the defendant in the alleged unconstitutional conduct, or active knowledge and acquiescence on the defendant's part to such conduct." Id. In a footnote, the court added that the complaint failed to allege a "causal connection between any policy or procedure implemented by defendants and any constitutional violation allegedly suffered by plaintiffs." Id. n. 3.
 
 
 12
 District Council 47 now appeals the district court's dismissal of its complaint.[2] For the reasons expressed below, we vacate the district court's order and remand for further proceedings.
 
 II.
 
 13
 The sole issue before us on this appeal is the district court's dismissal of District Council 47's section 1983 cause of action based on alleged deprivations of black employees' liberty and property interests without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States.[3]
 
 
 14
 The defendant Court of Common Pleas officials argue that District Council 47's complaint merely identifies the defendants as officials of the Court of Common Pleas, but does not allege that those defendants were individually responsible for the administration and implementation of the discriminatory promotional examination. The Court defendants argue that the only alleged nexus between the test and the defendants in the complaint is District Council 47's allegation that the tests were "administered by the Court of Common Pleas of Philadelphia and McCann Associates." Complaint, p 17, app. 7. There is no specific allegation that the named individual defendants employed McCann Associates to draft the test, or that those individual defendants administered or failed to validate the test. Further, they argue the complaint does not allege that any of the Court defendants knew that the test was unvalidated or discriminatory.
 
 
 15
 In reviewing a district court's dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), we must take all allegations and reasonable inferences which can be drawn therefrom as true and view them in the light most favorable to the plaintiff. Complaints may properly be dismissed only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle them to relief." Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985).
 
 
 16
 Generally, we should construe pleadings liberally. Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-03, 2 L.Ed.2d 80 (1957). However, it is undisputed that this court has established a higher threshold of factual specificity for civil rights complaints. As this court stated in United States v. City of Philadelphia, 644 F.2d 187, 204 (3d Cir.1980),
 
 
 17
 a substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants--public officials, policemen and citizens alike--considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims.
 
 
 18
 644 F.2d at 204 (quoting Valley v. Maule, 297 F.Supp. 958, 960-61 (D.Conn.1968)). We have said "that a civil rights complaint that relies on vague and conclusory allegations does not provide 'fair notice' and will not survive a motion to dismiss." Id. at 204.
 
 
 19
 Where, however, sufficient facts are alleged in the complaint so that the court is satisfied that the complaint is not frivolous and that the defendants have been provided with adequate notice so that they can answer the complaint, then the complaint will be deemed sufficient and will be sustained. As this court recently said in Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65 (3d Cir.1985):
 
 
 20
 Inevitably, the sufficency of a complaint must be determined on a case-by-case basis. The factors discussed in prior decisions are helpful to a court making such an evaluation, but they must be considered in light of the purposes of the specificity rule. Thus, the crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer. At the same time, however, a court cannot expect a complaint to provide proof of plaintiffs' claims, nor a proffer of all available evidence. In civil rights cases, especially class actions, much of the evidence can be developed only through discovery. While plaintiffs may be expected to know the injuries they allegedly have suffered, it is not reasonable to expect them to be familiar at the complaint stage with the full range of the defendants' practices under challenge.
 
 
 21
 785 F.2d at 68.
 
 
 22
 In this action, where the complaint alleges that personnel policies and contractually-bargained for terms and conditions of employment created liberty and property rights in the administration of a non-discriminatory promotional examination, the identification of the chief officers of the Court of Common Pleas is sufficient to provide adequate notice to the defendants to frame an answer. The complaint provides sufficient specific facts giving rise to the cause of action to put the proper defendants on notice of the essential elements of plaintiffs' cause of action. Here, as in Frazier, the defendants "can readily discern the nature of the claim" from the complaint. 785 F.2d at 69.
 
 
 23
 District Council 47 argues that the classic case which is dismissed for lack of specificity normally involves an attempt to sue the chief officials of a state agency for actions which arguably violate a plaintiff's civil rights and which are taken by subordinates. For example, in a case where a police officer is alleged to have violated a plaintiff's civil rights, the plaintiff often names as defendants the Chief of Police, the Mayor, or the Governor, alleging in conclusory fashion that the single police officer's improper conduct was taken in conjunction with an unconstitutional policy established by the state or municipality involved. In such cases, the failure to identify the specific policy and the role of the named defendants in the implementation of that policy may result in an insufficient complaint which falls short of providing adequate notice to the defendants of the essential nature of the claim.
 
 
 24
 In Hall v. Pennsylvania State Police, 570 F.2d 86 (3d Cir.1978), this court reversed the district court's dismissal of a civil rights complaint under Sec. 1983 because of its alleged factual insufficency. In so doing, the court noted that the essential elements of a complaint were recited. In sustaining the complaint, the court observed that the plaintiff had included allegations of "the conduct violating [the plaintiff's] rights (racial discriminatory practices), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials)." 570 F.2d at 89. Likewise here, the instant complaint identifies the specific conduct violating the plaintiffs' rights (administration of a discriminatory examination in violation of the liberty and property interests created by the collective bargaining agreement and the personnel policies of the Court of Common Pleas), the time, (November 1984), the place, (Philadelphia), and those responsible, (the Administrative and Executive Directors of the Court of Common Pleas).
 
 
 25
 Responsibility for generalized personnel and employment policies, such as the drafting, approval and administration of a promotional examination, ultimately must fall on the chief administrative and executive officers of a state government entity. Government officials, such as those charged here by District Council 47, would be hard pressed to deny their responsibility for approving the employment of the firm drafting such an examination (McCann) and the final content of that examination. Where, as here, the complaint specifically alleges a violation of clearly identified liberty and property interests through specific actions, a suit against the officials involved should not be dismissed merely because it fails to allege which particular defendants were personally responsible for the implementation of the alleged constitutional personnel policies. As we said in Frazier, further discovery "undoubtedly will reveal ... the officials responsible" for those policies. 785 F.2d at 69.
 
 
 26
 The dissent misconceives our discussion of Frazier. See dissenting op. at 318-21. We have not held that Frazier has in any way changed or overruled the pleading requirements for civil rights complaints established in this Circuit. Frazier does no more than recognize that civil rights plaintiffs need not plead in their complaint all possible evidence concerning alleged constitutional violations. After Frazier, the test for evaluating the sufficiency of a civil rights complaint on a Rule 12(b)(6) motion to dismiss remains the same as it has been since Rotolo v. Borough of Charleroi, 532 F.2d 920 (3d Cir.1976) and United States v. City of Philadelphia, 644 F.2d 187 (3d Cir.1980), i.e. whether the complaint alleges sufficient facts so as to preclude a determination that the complaint is frivolous and whether sufficient facts are pleaded so as to provide a defendant with enough information so that an answer may be framed.
 
 
 27
 District Council 47's complaint fully meets the threshold level of factual specificity established in Rotolo and followed in Frazier. Notably, the dissent does not attempt to argue that District Council 47's allegations are frivolous. Rather, the dissent focuses solely on the complaint's failure to properly identify the specific roles of the named individual defendants in those actions which allegedly violated the plaintiffs' constitutional rights.
 
 
 28
 However, as discussed earlier, in the context of these particular circumstances District Council 47's complaint alleges more than sufficient facts to put the proper defendants on notice so that they can frame an answer. To require more at this stage of the proceedings would impose on civil rights plaintiffs an impossible burden of knowledge of the internal workings of state institutions--knowledge which can only be discerned through the discovery process.
 
 
 29
 In its rejection of our holding, the dissent relies heavily on this court's recent decision in Anela v. City of Wildwood, 790 F.2d 1063 (3d Cir.1986), in support of its position that District Council 47's complaint constitutes an improper attempt to visit Sec. 1983 liability upon the named defendants on the basis of the doctrines of vicarious liability or respondeat superior. Dissenting op. typescript at 317. However, in Anela, the district court dismissed the equal protection claim there asserted pursuant to the defendant police officers' motion for a directed verdict following the presentation of plaintiff's evidence at trial. In the instant case, the district court dismissed the plaintiff's complaint at the very threshold of the proceedings, long before any evidence had been adduced at trial or obtained through discovery. The Anela court dismissed the equal protection claim "solely on the basis that there was insufficient evidence to identify the specific police officers responsible" for allegedly violating the plaintiff's constitutional rights. 790 F.2d at 1067.
 
 
 30
 Anela's requirement that a Sec. 1983 plaintiff prove that the specific named defendants personally harmed him in order to prevail at trial does not mean that a civil rights plaintiff must identify each specific action taken by each specific individual defendant in his complaint in order to state a cognizable claim. Where, as here, the complaint identifies those state officials who logically were (and which further discovery will no doubt establish) individually and personally responsible for ordering and approving the drafting and giving of allegedly discriminatory promotional examinations, the complaint is more than adequate to fulfill even the stringent pleading requirements established in this Circuit for civil rights complaints.
 
 
 31
 District Council 47, in our view, struck a proper balance by naming as defendants those persons logically responsible for personally drafting and implementing that policy. This Circuit's pleading requirements require no more to withstand a motion to dismiss.
 
 
 32
 Thus, District Council 47 correctly argues that the district court's holding that this complaint is "wholly" lacking in specific facts to support the claims made is tantamount to requiring plaintiffs to plead evidence "specify[ing] the date and time of the actual decisions to draft the examinations" thereby "creat[ing] insurmountable obstacles for challenging any official action." District Council 47 br. at 24. Such a requirement of specificity would mark a return to the discredited practice of fact pleading. We therefore conclude that the district court erred in dismissing District Council 47's complaint for lack of specificity.
 
 III.
 
 33
 The Court defendants argue that even if the district court erred in dismissing the complaint due to lack of specificity, the complaint nevertheless fails to state a cause of action under section 1983 because it does not allege intentional discrimination by the defendants. District Council 47 counters that allegations of intentional or purposeful discrimination are only required to state a claim under the equal protection clause of the fourteenth amendment. Allegations of purposeful discrimination are not necessary for causes of action based on alleged deprivations of property or liberty interests in violation of the due process clause of the fourteenth amendment. See Poolaw v. City of Anadarko, 660 F.2d 459, 462 (10th Cir.1981), cert. denied, --- U.S. ----, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985) (a claim under section 1981 that the state has impermissibly discriminated on the basis of race and thereby denied the plaintiff equal protection is not to be confused with a claim that the state has deprived a plaintiff of a liberty or property interest without due process of law.)
 
 
 34
 The district court ruled only on the lack of specificity of District Council 47's complaint. It did not rule on whether a viable Sec. 1983 cause of action was stated. See e.g., Perri v. Aytch, 724 F.2d 362, 365-66 (3d Cir.1983) (Court of Common Pleas created liberty and property interests through its personnel policies). Because the district court has not addressed or decided this question, we leave this issue for determination by the district court on remand.
 
 IV.
 
 35
 District Council 47 also contends that even if its complaint were deficient for lack of specificity, the district court should not have dismissed the complaint without granting plaintiffs permission to amend. In Darr v. Wolfe, 767 F.2d 79 (3d Cir.1985), in affirming the district court's dismissal of a complaint found to be lacking in specific facts to support the conclusory claim that the defendants had deprived the plaintiffs of their constitutional rights under Sec. 1983, we nonetheless afforded the plaintiff Darr an opportunity to amend his complaint so as to provide, if he could, the missing factual specificity. Id. at 81. In that case, we stated that
 
 
 36
 this court has consistently held that when an individual has filed a complaint under Sec. 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint and that denial of an application for leave to amend under these circumstances is an abuse of discretion.
 
 
 37
 767 F.2d at 81.
 
 
 38
 In Borelli v. City of Reading, 532 F.2d 950 (3d Cir.1976), this court established the recommended procedure that a district court should follow in ruling on a dismissal of a complaint for failure to state a claim:
 
 
 39
 Since it may be difficult to determine whether the district court thought an amendment was possible and whether the plaintiff is willing or able to amend, we suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate.
 
 
 40
 Under its reading of the complaint, the district court at the least should have granted the plaintiffs leave to amend their complaint to provide sufficient specific factual allegations to demonstrate a causal nexus between the defendants' actions and the alleged violation of constitutional rights. The fact that District Council 47 appealed the dismissal of this complaint rather than seeking leave to amend pursuant to Fed.R.Civ.P. 15(a) before the district court should not prejudice the plaintiffs. Although we obviously have permitted plaintiffs to stand on their complaints when they so desire, see Borelli, supra, we have never required plaintiffs to request leave to amend following a district court's dismissal of a complaint.
 
 V.
 
 41
 We will vacate the district court's order of August 15, 1986 dismissing District Council 47's complaint and remand to the district court for further proceedings consistent with this opinion.
 
 
 42
 ALDISERT, Chief Judge, dissenting.
 
 
 43
 In the grand scheme of things it makes no difference whether the majority's conclusion or mine prevails in this case. Under either formulation, District Council 47, American Federation of State, County and Municipal Employees AFL-CIO and the two class representatives would have their day in court at some time.
 
 
 44
 The majority, however, excuse the atrocious pleadings drafted by District Council 47's lawyers in this important case. I would not. This is not a pro se matter; plaintiffs here were represented by experienced lawyers, a Philadelphia-based firm and the prestigious Washington, D.C.-based Lawyers' Committee for Civil Rights Under Law. The majority also excuse the failure of plaintiffs' counsel to make any effort to amend the complaint. I would not. I would require plaintiffs' counsel (at their expense and not that of their clients) to file a new complaint naming the proper defendants and explaining what particular constitutional deprivations have been suffered by the plaintiffs and how the named defendants are responsible. I see no reason to torture and twist controlling case law to accommodate plaintiffs' counsel. I would not reward slipshod lawyering by making Judge Bechtle the patsy for counsel's derelictions and by branding the judge's action as reversible error. Because my disagreement with the majority is fundamental, I set forth my views at length.
 
 I.
 
 45
 A long line of cases in this court and circuit has established that civil rights deprivations must be pleaded with more specificity than other civil complaints. The longstanding rule is to impose a higher standard on civil rights complaints and to dismiss them, as Judge Maris has said, if they do not "set forth with factual specificity the conduct of defendants alleged to have harmed the plaintiff." Darr v. Wolfe, 767 F.2d 79, 80 (3d Cir.1985); see also Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65, 67-68 (3d Cir.1986); Kauffman v. Moss, 420 F.2d 1270, 1275-76 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). The value of requiring specific facts in civil rights complaints is increasingly well recognized. A recent commentator noted that:
 
 
 46
 The leader in this movement has been the Third Circuit, which is forthright about its motivation: " 'In recent years there has been an increasingly large volume of cases brought under the Civil Rights Act.... It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation....' " To achieve this objective most courts now declare that conclusory allegations are inadequate to state a civil rights claim. They require specific delineation of the facts claimed to show a violation of plaintiff's civil rights....[1]
 
 
 47
 Under this court's standard a complaint alleging violation of a plaintiff's civil rights will not survive a motion to dismiss pursuant to Rule 12(b)(6), F.R.Civ.P., if it does "not in any manner allege facts showing a nexus between acts ... [violating constitutional rights] and the named individual defendants," United States v. City of Philadelphia, 644 F.2d 187, 205 (3d Cir.1980), or "identify[] the particular conduct of defendants that is alleged to have harmed the plaintiffs." Ross v. Meagan, 638 F.2d 646, 650 (3d Cir.1981) (per curiam) (citations omitted).
 
 
 48
 District Council 47 did not satisfy the requirement of specific pleading.[2] Factual allegations set forth in its complaint did not supply the nexus between the actions of the named defendants and injuries suffered by plaintiffs. Instead, the complaint faulted "the Court of Common Pleas of Philadelphia" or McCann Associates, Inc., the firm that the Court hired to prepare, administer and grade the promotional examinations. See, e.g., app. at 7, 9. In all instances in which the complaint addressed the conduct of the named defendants, allegations were non-specific, conclusory, and undifferentiated, referring to "defendants" en masse rather than as individuals. App. at 2, 12, 13, 17. Thus, District Council 47 neither alleged specific facts concerning the particular conduct of the defendants nor demonstrated a nexus between the defendants and the alleged constitutional violations. See United States v. City of Philadelphia, 644 F.2d at 205; Ross v. Meagan 638 F.2d at 650.
 
 
 49
 The majority nevertheless contend that where "the complaint specifically alleges a violation of clearly identified liberty and property interests through specific actions, a suit against the officials involved should not be dismissed merely because it fails to allege which particular defendants were personally responsible for the implementation of the alleged constitutional personnel policies." Majority at 314. Without factual support set forth in the complaint the majority apparently concluded that the named defendants were "the officials involved" because "[r]esponsibility for ... a promotional examination, ultimately must fall on the chief administrative and executive officers of a state government entity." Id. This is an appellate court assumption, not a specific allegation set forth in the complaint before the district court. That the complaint alleged the named defendants to have held positions of authority in the Court, however, does not establish the requisite allegation tying the defendants to the unconstitutional activity that caused the injury.
 
 
 50
 The district court correctly noted that liability under section 1983 cannot be imposed vicariously or on the basis of respondeat superior. Rizzo v. Goode, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir.1976); Bracey v. Grenoble, 494 F.2d 566, 571 (3d Cir.1974). This court's most recent pronouncement is set forth in Anela v. City of Wildwood, 790 F.2d 1063, 1067 (3d Cir.1986):
 
 
 51
 The district court dismissed the equal protection claim solely on the basis that there was insufficient evidence to identify the specific police officers responsible for detaining and confining those plaintiffs. The police log sheets admitted into evidence in response to plaintiffs' motion to reopen the case did not indicate which officers actually dealt with the plaintiffs. Plaintiffs in section 1983 suits must identify defendants with greater specificity than plaintiffs provided here.
 
 
 52
 In Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), plaintiffs alleged civil rights abuses by the Philadelphia police. They named defendants who had not personally committed any abuses or been responsible for policies causing them. The Supreme Court held that such defendants could not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses. Id. at 370-71, 96 S.Ct. at 603-04. Similarly, the court in Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133 (4th Cir.1982), held that a county sheriff was not per se liable for violations of a plaintiff's constitutional rights merely because the plaintiff was in a jail for which he was responsible. Without evidence of the sheriff's participation in the events of the prisoner's detention, "[h]e cannot be held liable vicariously under Sec. 1983 for any conduct of his subordinates. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir.1977). Neither could he be held liable on the basis of a failure adequately to supervise or control any conduct that directly caused the specific deprivation charged." Id. at 1142-43.
 
 
 53
 The majority rely on Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65 (3d Cir.1986), for their proposition that District Council 47's "complaint provides sufficient specific facts giving rise to the cause of action to put the proper defendants on notice of the essential elements of plaintiffs' cause of action." Majority at 313. Plaintiffs brought suit against the Southeastern Pennsylvania Transportation Authority (SEPTA) in Frazier and in their complaint set "forth a series of acts and practices by SEPTA which discriminate[d] against the plaintiffs on the basis of race, in violation of Sec. 1981." Frazier, 785 F.2d at 68 (emphasis supplied). This court held that some of their allegations were sufficient to withstand a motion to dismiss under the standard of Rotolo v. Borough of Charleroi, 532 F.2d 920, 923 (3d Cir.1976), because "[a]lthough the [complaint] does not state precisely when and where the [racially discriminatory] firings took place, SEPTA's personnel files undoubtedly will reveal the dates of the disciplinary actions and the officials responsible...." 785 F.2d at 69. The "officials responsible," however, were not named defendants. SEPTA was. The officials were identified as employees. Thus, in Frazier there was no uncertainty, as is present here, whether SEPTA was a proper defendant. By contrast, District Council 47 did not file suit against the Philadelphia Court of Common Pleas, but named as defendants only certain individual officers, or representatives, or employees of the Court. In the absence of any allegations describing each defendant's role in the Court's allegedly unconstitutional practices, under the teachings of Rizzo v. Goode I cannot conclude that District Council 47 has sued the proper parties. District Council 47 and the majority have thus failed to distinguish this case from "the classic case which is dismissed for lack of specificity": that which "involves an attempt to sue the chief officials of a state agency for actions which arguably violate a plaintiff's civil rights and which are taken by subordinates." Majority at 313-14.
 
 
 54
 Absent any allegation of defendants' particular or personal involvement or acquiescence in, or knowledge of, the use of the promotion examination, the complaint simply does not meet the standards imposed by this court. Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978) (civil rights plaintiff must allege "the conduct violating his rights ..., time ..., place ... and those responsible...."). Accordingly, I conclude that the district court did not err in dismissing the complaint under Rule 12(b)(6) for failure to state a claim.
 
 II.
 
 55
 The majority seem to think that the rule of this court has been changed on the basis of an isolated passage in Frazier v. Southeastern Pennsylvania Transportation Authority, 785 F.2d 65, 68 (3d Cir.1985):
 
 
 56
 Thus, the crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer. At the same time, however, a court cannot expect a complaint to provide proof of plaintiffs' claims, nor a proffer of all available evidence. In civil rights cases, especially class actions, much of the evidence can be developed only through discovery. While plaintiffs may be expected to know the injuries they allegedly have suffered, it is not reasonable to expect them to be familiar at the complaint stage with the full range of the defendants' practices under challenge.
 
 
 57
 The majority interpret these four sentences to eviscerate an entire line of relevant case law.[3] The passage does appear as legal prose in Frazier. Yet the language does not have the bite of precedent, because although the panel, having been assigned the case, had the power to say it, the panel lacked the authority to do so. A panel has the power to speak and interpret, but no authority to change. Accordingly, the passage is a statement that does not rise to the dignity of a "performative utterance," that is, a court's holding endowed with precedential vitality.[4] No panel of this court has the authority to overrule, directly or indirectly, a decision of this court, let alone a long line of established case law. Yet, if interpreted literally, these words have the capacity to do just that. If interpreted literally, they have the capacity to nullify ruling case law, firmly entrenched. Replacing the requirement of specificity demanded by a host of precedents, this language suggests that we now will accept the vaguest, most conclusory, non-specific language as sufficient to withstand a motion to dismiss a civil rights complaint. The language suggests that the process of discovery is a substitute for the pleading specificity required by our cases. Taken literally, this language wreaks a profound change in the decisions of this court.
 
 
 58
 But, to repeat, emphatically, Frazier was a panel opinion, and not that of a court in banc. And to repeat, also emphatically, no panel of this court has the authority to change ruling case law. United States v. Babich, 785 F.2d 415, 417 n. 2 (3d Cir.1986). Our Internal Operating Procedures specifically "provide that a published opinion of the court expressed by a panel may not be overruled without the approval of a majority of the full court."[5] Indeed, Judge Adams, the opinion writer in Frazier, has on several occasions reminded us of this limitation.[6] Thus, even if the majority are correct in suggesting that Frazier has promulgated a less rigorous standard for evaluating civil rights complaints than that established by our earlier decisions, those earlier cases still control. The Frazier passage constitutes legal literature, not legal precedent. Those earlier cases still control. And they will continue to control until changed by the court in banc.[7] "[T]he integrity of our jurisprudence and the discharge of our function in guiding and informing the district courts require no less." Gluck v. United States, 771 F.2d 750, 761 (3d Cir.1985) (Garth, J., dissenting).
 
 III.
 
 59
 The majority also accept District Council 47's alternative contention--that the district court erred by not granting leave to amend the complaint before dismissal. Yet the unvarnished record discloses that plaintiffs' counsel never requested leave to amend. The majority thus fault the district judge a second time for a transgression that can be laid exclusively upon plaintiffs' counsel. In effect, Judge Bechtle is charged with denying relief that was never requested, in denying a motion that was never presented, and in erring on a ruling that he never made.
 
 
 60
 Although the district court did not follow in ipsis verbis the procedure suggested, but not mandated by Borelli v. City of Reading, 532 F.2d 950, 952 n. 1 (3d Cir.1976), this did not prevent District Council 47 from amending its complaint without seeking leave of court. By the terms of Rule 15(a), F.R.Civ.P., "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served...." Because the defendants' motion to dismiss under Rule 12(b)(6) did not constitute a responsive pleading for purposes of Rule 15(a), it did not affect District Council 47's right to amend. Kelly v. Delaware River Joint Commission, 187 F.2d 93, 94-95 (3d Cir.), cert. denied, 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614 (1951). Moreover, District Council 47's opportunity to amend continued even after entry of the district court's order dismissing the complaint. Although a plaintiff loses the right to amend the complaint when judgment is entered on a motion to dismiss, "the district court is enjoined to 'freely' permit amendment as a matter of discretion." Kauffman v. Moss, 420 F.2d 1270, 1276 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970).
 
 
 61
 But plaintiffs' counsel did not seek to amend. Instead they chose to appeal. Consequently, the error asserted by appellants here is not that the district court denied a motion for leave to amend, e.g., Ross v. Meagan, 638 F.2d 646, 650 (3d Cir.1981) (per curiam), or otherwise foreclosed an opportunity to amend, e.g., Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir.1985). Had District Council 47 sought to persuade this court that it had valid reasons for standing on its complaint and seeking an immediate appeal rather than amending, the majority's decision to vacate the order with instructions to grant leave to amend might have some justification. See Borelli v. City of Reading, 532 F.2d at 951 n. 1; 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 3914 (1976). No such explanations were presented to us, however. I do not read Borelli to stand for the proposition that a district court's failure to grant, sua sponte, leave to amend a complaint before dismissing it for failure to state a claim constitutes reversible error. Nor have I been directed to any Federal Rule of Civil Procedure that mandates this.
 
 
 62
 This case is simply an example of poor lawyering--both in drafting the complaint and in failing to amend it as of right or, subsequently, to seek leave to amend. My colleagues of the panel reward such peccancies of counsel. They transmigrate, if not transmogrify, the fault of the lawyer to the judge, and stigmatize the judge with reversible error. This is unfair and it is wrong. I dissent and would affirm the district court's judgment in all respects.
 
 
 
 [1]
 Specifically, the complaint named as defendants: the Honorable Edward J. Bradley, who as President Judge of the Court of Common Pleas of Philadelphia "is the highest ranking official of the Court"; Harry A. Takiff, the "Court Administrator of the Court of Common Pleas of Philadelphia"; the Honorable Nicholas Cipriani, "the Administrative Judge of the Family Court Division of the Court of Common Pleas of Philadelphia"; Joseph Teti, "the Deputy Court Administrator of the Adult Division of the Court of Common Pleas of Philadelphia"; and Dr. Leonard Rosengarten, "the Deputy Court Administrator of Family Division of the Court of Common Pleas of Philadelphia". Complaint, paragraphs 11-15, App. 5-6
 
 
 [2]
 District Council 47 did not file a motion in the district court to amend their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. No mention of any motion for leave to amend was made either in the district court's final order or its accompanying memorandum opinion
 
 
 [3]
 District Council 47 does not appeal the district court's dismissal of plaintiffs' Title VII action, 42 U.S.C. Sec. 2000e et seq. Since the district court's dismissal of those claims, District Council 47 has filed discrimination charges with the appropriate state agency, thereby pursuing the Title VII claim in that forum
 
 
 [1]
 Marcus, The Revival of Fact Pleading Under the Federal Rules of Civil Procedure, 86 COLUM.L.REV. 433, 449 (1986), quoting Rotolo v. Borough of Charleroi, 532 F.2d 920, 922 (3d Cir.1976) (quoting Valley v. Maule, 297 F.Supp. 958, 960 (D.Conn.1968)). See also, Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir.1984); Albany Welfare Rights Org. Day Care Center, Inc. v. Schreck, 463 F.2d 620, 623 (2d Cir.1972), cert. denied, 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973)
 
 
 [2]
 I put aside at this time and leave to the district court, as do the majority, the equally serious question of whether, even if supported by specific pleadings, the plaintiffs would have set forth a case of constitutional deprivation under 42 U.S.C. Sec. 1983 that could survive a motion under Rule 12(b)(6) (failure to state a claim upon which relief may be granted) or Rule 56 (summary judgment) of the Federal Rules of Civil Procedure
 
 
 [3]
 See, e.g., Darr v. Wolfe, 767 F.2d 79, 80 (3d Cir.1985); Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir.1984) (per curiam); Mokone v. Fenton, 710 F.2d 998, 1002 n. 12 (3d Cir.1983); United States v. City of Philadelphia, 644 F.2d 187, 204 (3d Cir.1980); Ross v. Meagan, 638 F.2d 646, 650 (3d Cir.1981); Boykins v. Ambridge Area School District, 621 F.2d 75, 80 (3d Cir.1980); Rhodes v. Robinson, 612 F.2d 766, 773 (3d Cir.1979); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978); Rotolo v. Borough of Charleroi, 532 F.2d 920, 922 (3d Cir.1976); Curtis v. Everette, 489 F.2d 516, 521 (3d Cir.1973), cert. denied sub nom. Smith v. Curtis, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); Esser v. Weller, 467 F.2d 949, 950 (3d Cir.1972) (per curiam); Gray v. Creamer, 465 F.2d 179, 182 n. 2 (3d Cir.1972); Robinson v. McCorkle, 462 F.2d 111, 112-14 (3d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); Marcedes v. Barrett, 453 F.2d 391, 391-92 (3d Cir.1971) (per curiam); U.S. ex rel Birnbaum v. Dolan, 452 F.2d 1078, 1079 (3d Cir.1971); Fletcher v. Hook, 446 F.2d 14, 16 (3d Cir.1971); Oliver v. Governor of the State of Pennsylvania, 442 F.2d 1347, 1348 (3d Cir.), cert. denied, 404 U.S. 1002, 92 S.Ct. 570, 30 L.Ed.2d 555 (1971); Pusateri v. Johnston, 398 F.2d 327, 329 (3d Cir.1968); U.S. ex rel Hoge v. Bolsinger, 311 F.2d 215, 216 (3d Cir.1962) (per curiam), cert. denied, 372 U.S. 931, 83 S.Ct. 878, 9 L.Ed.2d 735 (1963)
 
 
 [4]
 Elsewhere, I have emphasized that statements in a published opinion must be drafted with extreme care:
 Published opinions are the principal means of carrying out the decisional process and, as such, qualify as "performative utterances." Professor J.L. Austin appears to have contrived the word "performative." When combined with the word "utterances," the term defines an expression that is not only articulated but also operative.[24] Because judicial opinions fit this description,[25] we can say that a court's public performance in reaching a conclusion is at least as important as that conclusion.
 
 
 [24]
 J. Austin, Philosophical Papers 220 (1961).
 
 
 [25]
 Here, too, lies the "operative" distinction between a court's opinion and a law review article. Both are legal utterances; only the opinion is performative.
 Aldisert, Opinion Writers and Law Review Writers: A Community and Continuity of Approach, 16 Duquesne L.Rev. 139, 149 (1977-78).
 
 
 [5]
 Internal Operating Procedures of the United States Court of Appeals for the Third Circuit (IOP) provide in relevant part:
 B. Policy of the Court.
 In order that a panel's decisions may reflect input from the entire court on the law in this circuit, these procedures are designed:
 ....
 
 
 [2]
 To insure decisional stability of the court by providing a means for the panel system to operate efficiently and at the same time provide that a published opinion of the court expressed by a panel may not be overruled without the approval of a majority of the full court
 IOP, Introduction at iii.
 C. Policy of Avoiding Intra-Circuit Conflict of Precedent.
 It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court.
 IOP, Chapter 8c at 25.
 
 
 [6]
 Government of Virgin Islands v. Martinez, 780 F.2d 302, 310 n. 10 (3d Cir.1985); Wolk v. Saks Fifth Avenue Inc., 728 F.2d 221, 224 n. 3 (3d Cir.1984); Matter of Roloff, 598 F.2d 783, 786 (3d Cir.1979)
 
 
 [7]
 This principle has been well recognized in the decisions of this court, e.g., United Food and Commercial Workers Union v. N.L.R.B., 788 F.2d 178, 182-83 n. 7 (3d Cir.1986); United States v. Accetturo, 783 F.2d 382, 395 (3d Cir.1986) (Sloviter, J., dissenting); Goodman v. Lukens Steel Co., 777 F.2d 113, 131 (3d Cir.1985) (in banc) (Garth, J., dissenting); Gluck v. United States, 771 F.2d 750, 761 (3d Cir.1985) (Garth, J., dissenting); McLaughlin v. Arco-Polymers, Inc., 721 F.2d 426, 430 n. 5 (3d Cir.1983); American Future Systems v. Pennsylvania State University, 688 F.2d 907, 914 (3d Cir.), cert. dismissed, 459 U.S. 1093, 103 S.Ct. 583, 74 L.Ed.2d 941 (1982); Hood v. New Jersey Department of Civil Service, 680 F.2d 955, 959 (3d Cir.1982) (Sloviter, J., dissenting); Williams v. Red Bank Board of Education, 662 F.2d 1008, 1020 (3d Cir.1981); O. Hommell v. Ferro Corporation, 659 F.2d 340, 354 (3d Cir.1981), cert. denied, 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982); Hamilton v. Roth, 624 F.2d 1204, 1209 (3d Cir.1980); United States v. Montoya, 612 F.2d 792, 793 (3d Cir.1980); Holliday v. Ketchum, MacLeod & Grove, Inc., 584 F.2d 1221, 1223 n. 3 (3d Cir.1978) (in banc); Chalfant v. Wilmington Institute, 574 F.2d 739, 753 n. 7 (3d Cir.1978) (in banc) (Garth, J., dissenting)