147 N.J. Super. 28 (1977)
370 A.2d 521
URBAN LEAGUE OF ESSEX COUNTY; NORTH JERSEY COMMUNITY UNION; KENNETH BORUCKI; AMY INGRAM; JOHN LIGON; AND JOSE MUNIZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF MAHWAH, ET AL; BOROUGH OF RAMSEY, ET AL; BOROUGH OF SADDLE RIVER, ET AL; BOROUGH OF UPPER SADDLE RIVER, ET AL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1977.
Decided February 2, 1977.
*29 Before Judges BISCHOFF, MORGAN and RIZZI.
*30 Mr. Richard F. Bellman of the New York Bar, argued the cause for appellants pro hac vice (Messrs. Eisner, Levy & Steel and Messrs. Courter, Kobert & Hare, attorneys).
Mr. Dean A. Gaver argued the cause for respondents Borough of Ramsey, Borough Council of Ramsey, Board of Adjustment of Ramsey, and Planning Board of Ramsey (Messrs. Hannoch, Weisman, Stern & Besser, attorneys).
Mr. Fred G. Stickel, III, argued the cause for respondent Borough of Saddle River (Messrs. Evans, Hand, Allabough & Amoresano and Messrs. Stickel, Kain and Stickel, attorneys).
Mr. Edward Sachar argued the cause for respondents Borough of Upper Saddle River, Borough Council, Planning Board of Upper Saddle River and Board of Adjustment of Upper Saddle River (Messrs. Sachar, Bernstein, Rothberg, Sikora & Mongello, attorneys).
Mr. Paul A. Dykstra argued the cause for respondent Township of Mahwah and relied upon the brief filed on behalf of respondent Borough of Ramsey (Messrs. Breslin and Breslin, attorneys).
The opinion of the court was delivered by BISCHOFF, J.A.D.
In this exclusionary zoning case the sole issue is standing. Plaintiffs, four individuals and two nonprofit corporations, had sought invalidation of the zoning ordinances of the four defendant municipalities, alleging their unconstitutionality by reason of their discriminatory effect in excluding potential residents on the basis of race, national origin and economic status. The suit was dismissed, on motion, for want of standing. Plaintiffs appeal.
The individual plaintiffs are:
1. Amy Ingram is black and lives with her disabled husband and six children in a "slum ghetto" in Newark. As *31 of the date the complaint was filed, one of her children was attending a community college in the vicinity of the four defendant municipalities. This plaintiff alleges that since there are no dormitory facilities at the college and no low-cost housing in the defendant communities, her child was compelled to live in a motel near the college at the expense of the college. This is alleged to be disruptive to the child's studies, and plaintiff asserts a right to decent, adequate and affordable housing in one of the defendant communities.
2. John Ligon is black, has a wife and two children and is a resident of Philadelphia, Pennsylvania. He maintains an apartment in New York to facilitate his commuting to his employment at the Ford plant in Mahwah.
3. Jose Muniz is Hispanic, has a wife and four children and lives in Bronx, New York. He, too, works at the Ford plant in Mahwah.
4. We have been advised that Kenneth Borucki is no longer a party.
Plaintiffs Ligon and Muniz allege that they live in inadequate housing and contend they have a right to an opportunity to live in decent, adequate and affordable housing either in the community where they work or a community adjacent thereto.
The organizational plaintiffs are the Urban League of Essex County and the New Jersey Community Union, both of which are nonprofit organizations having their principal place of business in Newark. These organizations are alleged to be the medium through which their members, described in the complaint as minority oppressed persons, assert their constitutional and statutory rights.
Neither organization, nor any individual, alleges any attempt to purchase or rent any dwelling, obtain a variance, or take any other steps to secure housing in the defendant communities.
The four defendant communities, Township of Mahwah and the Boroughs of Ramsey, Saddle River and Upper *32 Saddle River, are contiguous municipalities, all located in northwest Bergen County. Also named as defendants are the planning boards, boards of adjustment and officials of the four defendant communities.
The complaint sought broad relief, including: (1) a declaration that the zoning ordinances are unlawful under the First, Thirteenth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C.A. §§ 1981, 1982, 1983 and 3604, and Art. I, pars. 1, 5 and 18 of the Constitution of the State of New Jersey; (2) a declaration that the ordinances of the defendant communities are unlawfully discriminatory against plaintiffs inasmuch as they limit the type and nature of the housing permitted in the municipalities and set lot and floor size requirements; (3) an injunction barring enforcement of the master plans, zoning ordinances, building codes, etc., of the defendant municipalities, and (4) an order mandating the repeal of the offensive ordinances and enactment of new ones which would implement a plan furthering housing suitable for low and moderate-income persons.
At the conclusion of the hearing on the motion for summary judgment, the trial judge dismissed the declaratory judgment action, noting:
I am satisfied that under the law of the State of New Jersey that the plaintiff, individual plaintiffs, have failed to establish anything ripe for controversy in which they have a direct and pending interest which has been adversely affected by the zoning of the municipal defendants, and I have the discretionary right to deny the remedy of the use of the Declaratory Judgment Act under these circumstances. And I deny that use to these individual plaintiffs under these facts.
Further noting that the complaint attacked the zoning ordinances on what it called "socio-economic grounds," the judge viewed as dispositive and adopted, incorrectly we believe, the reasoning of Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
*33 The narrow issue raised by this appeal is whether plaintiffs, individually or collectively, have adequate standing to prosecute the issues and controversies raised by the allegations of the complaint.
New Jersey has historically taken a liberal view on the issue of standing. Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98 (1971); Al Walker, Inc. v. Stanhope, 23 N.J. 657 (1957); see also In re Quinlan, 70 N.J. 10, 34-35 (1976); Urban League of New Brunswick v. Carteret, 142 N.J. Super. 11, 18 (Law Div. 1976). While this issue of standing has not received extended discussion in any of the cases involving an attack on exclusionary zoning ordinances, the same liberal approach is to be applied to these cases. Southern Burl. Cty. NAACP v. Mt. Laurel Tp., 67 N.J. 151, 159, n. 3.
The trial judge's reliance upon Warth v. Seldin, supra, was inappropriate. Although Warth was an exclusionary zoning case similar to the present matter, plaintiffs there asserted violations of their federal civil and constitutional rights (42 U.S.C.A. §§ 1981, 1982 and 1983) and the action was heard in the federal court. The United States Supreme Court applied federal rules of standing and dismissed the suits, holding that the pleadings failed to state a "case or controversy" within "Art. III of the U.S. Constitution" and that "prudential limitations" of judicial governance required dismissal. Arlington Heights v. Metropolitan Housing Dev., ___ U.S. ___, ___, 97 S.Ct. 555, 50 L.Ed. 450 (1977). (But see Craig v. Boren, ___ U.S. ___, ___-___, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), where the applicability of the doctrine of "prudential limitations" has been limited.)
New Jersey is not, however, bound by federal rules of standing, particularly where rights under the State Constitution are brought into issue in the state courts. New Jersey's approach to the issue of standing is best explained in Crescent Park Tenants Ass'n. v. Realty Eq. Corp. of N.Y., supra, where the court said:
*34 Unlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies. U.S. Const. art. III, § 2; N.J. Const. art. VI, § 1. Nevertheless, we will not render advisory opinions or function in the abstract (New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240 (1949)) nor will we entertain proceedings by plaintiffs who are "mere intermeddlers" (Baxter v. Baxter, 43 N.J. Eq. 82, 86 (Ch. 1887), aff'd 44 N.J. Eq. 298 (E. & A. 1888)), or are merely interlopers or strangers to the dispute (Bergen County v. Port of New York Authority, et al., 32 N.J. 303, 307-318 (1960)). Without ever becoming enmeshed in the federal complexities and technicalities, we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidence a sufficient stake and real adverseness. In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits." [58 N.J. at 107-108; citations omitted]
Similarly, in the few reported cases in New Jersey involving attacks on exclusionary zoning ordinances, the necessity for the imposition of prudential limitations on standing applied in Warth has not been recognized. Southern Burl. Cty. NAACP v. Mt. Laurel Tp., supra; Urban League of New Brunswick v. Carteret, supra.
One of the principles established by the Mt. Laurel case is that so-called exclusionary zoning ordinances may be inimical to the general welfare and may be a basis for a cause of action. Considered in that context, it would indeed be anamolous to hold that those excluded could not challenge the zoning ordinances as being wrongfully exclusionary. Moreover, in Mt. Laurel the court did consider the standing issue of standing albeit by way of dictum, and made the following comment:
Plaintiffs fall into four categories: (1) present residents of the township residing in dilapidated or substandard housing; (2) former residents who were forced to move elsewhere because of the absence of suitable housing; (3) nonresidents living in central city substandard housing in the region who desire to secure decent housing and accompanying advantages within their means elsewhere; *35 (4) three organizations representing the housing and other interests of racial minorities. The township originally challenged plaintiffs' standing to bring this action. The trial court properly held (119 N.J. Super. at 166) that the resident plaintiffs had adequate standing to ground the entire action and found it unnecessary to pass on that of the other plaintiffs. The issue has not been raised on appeal. We merely add that both categories of nonresident individuals likewise have standing. N.J.S.A. 40:55-47.1; cf. Walker v. Stanhope, 23 N.J. 657 (1957). No opinion is expressed as to the standing of the organizations. [67 N.J. at 159, n. 3]
At the present stage of the proceedings we have no record from which the applicable region may be ascertained. Nevertheless, two of the plaintiffs work at the Ford plant in Mahwah and they assert that they are required to commute substantial distances to their jobs due to the absence of decent, adequate and affordable housing within the four contiguous defendant communities, resulting in hardship to them and their families. These factors fully support their standing to maintain this action.
Holding as we do, that it was error to dismiss the complaint for lack of standing as to these two individual plaintiffs, it is unnecessary for us to express any opinion as to the standing of the other two individual plaintiffs or of the two organizations. Southern Burl. Cty. NAACP v. Mt. Laurel Tp., supra, 67 N.J. at 159, n. 3; cf. Arlington Heights v. Metropolitan Housing Dev., supra, ___ U.S. at ___ n. 9, 97 S.Ct. 555; Raum v. Tredyffrin Tp., 20 Pa. Cmwlth. 426, 342 A.2d 450, 458 (Cmwlth. Ct. 1975); see also, Urban League of New Brunswick v. Carteret, supra, 142 N.J. Super. at 18.
The judgment dismissing the complaint is reversed and the matter is remanded for a plenary hearing.