**Leldon P. PITT, M.D., Plaintiff,**

v.

**PINE VALLEY GOLF CLUB, etc., et al., Defendants.**

Civ. A. No. 86–3159.

United States District Court,
D. New Jersey.

Sept. 21, 1988.

Greenberg & Prior by William S. Greenberg, Princeton, N.J., and Karcher, McDonnell & Rainone by Alan J. Karcher, Sayreville, N.J., for plaintiff.

Montano, Summers, Mullen, Manuel & Owens by Arthur Montano, Westmont, N.J., and Dechert, Price & Rhoads by Gordon W. Berger, Philadelphia, Pa., for defendants Pine Valley Golf Club, Ernest L. Ransome, III, Edward S. Magee, Jr.

Capehart & Scatchard, P.A. by Thomas H. Morgan, Moorestown, N.J., for defendants Boro of Pine Valley, Warner S. Shell, John R. Ott, Jr., Wm. K. Chapman.

## OPINION

RODRIGUEZ, District Judge.

### I. FACTS AND PROCEDURE

Plaintiff Leldon P. Pitt, M.D., seeks relief based on the allegedly unconstitutional effect of a Pine Valley Golf Club rule which restricts homeownership in the Borough of Pine Valley to members of the Pine Valley Golf Club. This matter comes before the court on the motions by defendants Pine Valley Golf Club (hereinafter the "Club"); Ernest L. Ransome, Club president, Edward S. Magee, Jr., Club manager, (hereinafter "Club defendants"); and the Borough of Pine Valley (hereinafter "Borough"); Borough Mayor Warner S. Shelly, and Borough Commissioners John R. Ott Jr. and William K. Chapman, (hereinafter "Borough defendants") for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6).

Plaintiff alleges the following facts which must be accepted as true for the purpose of ruling on defendants' Rule 12(b) motions. *See Conley v. Gibson*, 355 U.S. 41, 44–45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1958). In 1929, the New Jersey Legislature created the Borough of Pine Valley. The boundaries of the Borough are coextensive with the boundaries of the Pine Valley Golf Club. All land in the Borough is owned by the Club. Residents of the Borough may own their homes but must lease the land from the Club. There exists a Club rule that "No one may purchase a home within the Borough of Pine Valley without being a member of the Pine Valley Golf Club." (Complaint at ¶ 13). All Borough officials are members, officers, or employees of the Club. (Complaint at ¶ 14). Tax dollars collected by the Borough have been used to benefit the Club. (Complaint at ¶ 15).

In 1976, plaintiff initiated efforts to join the Club and acquire a residence in the Borough. Plaintiff "discussed the possibility" of purchasing the Borough home of the late John Arthur Brown with Ms. Sally Perkins, the daughter of Mr. Brown. At that time, plaintiff was informed by defendant Edward Magee, Jr., the manager of the Club, that "only Club members could own houses in Pine Valley." (Complaint at ¶ 16). Plaintiff then discontinued his efforts to purchase a home and continued efforts to gain admittance to the Club. *Id.* In 1977, plaintiff was "preliminarily approved" for membership. (Complaint at ¶ 17). In 1982, plaintiff was informed that he should deposit two thousand dollars ($2000.00) pursuant to his application. In

1985, plaintiff was rejected for membership. (Complaint at ¶ 18).

The instant complaint, brought pursuant to 42 U.S.C. § 1983, alleges violation of: the equal protection and due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution; the privileges and immunities clause of Article IV, section 2, of the United States Constitution; the New Jersey Constitution, Article 8, § 3; and the New Jersey Constitution, Article 1, ¶ 1. The complaint also alleges common law tortious interference with prospective economic advantage. Plaintiff seeks compensatory and punitive damages in addition to injunctive relief.

All defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief may be granted). In addition, defendant Magee seeks dismissal pursuant to Rule 12(b)(2) (lack of personal jurisdiction).

## II. FIFTH AND FOURTEENTH AMENDMENT CLAIMS

### A. Standard of review for motion to dismiss

Dismissal of a complaint for failure to state a claim is permissible only when it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980); Fed.R.Civ.P. 12(b)(6). The court must view all plaintiff's allegations as true, *Bryson,* 621 F.2d 559. In addition, "all inferences favorable to plaintiff will be drawn," *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977). Despite the liberal pleading requirements, the court need only accept the truth of facts. "[C]onclusory allegations, unsupported by facts, cannot withstand a motion to dismiss." *County of Cook v. Midcon Corp.,* 574 F.Supp. 902, 920 (N.D.Ill.1983), *aff'd* 773 F.2d 892 (7th Cir.1985).

■ The court notes that civil rights complaints require a higher level of factual specificity. *District Council 47, AFSCME v. Bradley,* 795 F.2d 310, 313 (3d Cir.1986). The court recognizes that discovery is particularly necessary in order to develop evidence to support such claims. *Frazier v. Southeastern Pennsylvania Transportation Authority,* 785 F.2d 65, 68 (3d Cir. 1986). However, the rule is clear: the complaint will be sustained if "sufficient facts are alleged in the complaint so that the court is satisfied that the complaint is not frivolous and that the defendants have been provided with adequate notice so that they can answer the complaint." *Bradley,* 795 F.2d at 313.

### B. Fifth Amendment

■ Plaintiff asserts claims under the due process and equal protection clauses of the Fifth Amendment to the United States Constitution. However, plaintiff does not allege any action by the federal government. The Fifth Amendment is a limitation on the federal government and has no reference to state actions. *Ex parte Whistler,* 65 F.Supp. 40 (E.D.Wis.1945), *cert. denied,* 327 U.S. 797, 66 S.Ct. 822, 90 L.Ed. 2d 1023 (1946), *reh'g denied,* 327 U.S. 819, 66 S.Ct. 959, 90 L.Ed. 1041 (1946). Therefore, defendants' motion to dismiss plaintiff's due process and equal protection claims under the Fifth Amendment is granted.

### C. Fourteenth Amendment—state action requirement

With regard to plaintiff's equal protection and due process claims brought under 42 U.S.C. § 1983 and the Fourteenth Amendment, defendants argue that plaintiff fails to state a claim upon which relief can be granted due to an absence of the requisite state action. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982). Defendants claim that the Club rule which excludes non-members from buying homes in the Borough is the act of a private entity and thus not subject to legal scrutiny under either section 1983 or the United States Constitution.

■ Under the state action doctrine, a plaintiff must demonstrate that the alleged violations of the Constitution are "fairly attributable to the State." *Lugar*, 457 U.S. at 923, 102 S.Ct. at 2746. The Supreme Court has applied a number of approaches for determining the existence of state action. *Community Medical Center v. Emergency Medical Services*, 712 F.2d 878, 880 (3d Cir.1983). Among the approaches are: (1) a symbiotic relationship between a private and state actor, *see Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); (2) a close nexus relationship between a state actor and the private action in question, *see Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); and (3) the public function approach, *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).[1] *See Community Medical Center*, 712 F.2d at 880.

■ In order to determine the reach of the Fourteenth Amendment in a particular case, a fact specific review of the alleged state action must be made. *See Evans*, 382 U.S. at 300, 86 S.Ct. at 489. *See also Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754–55. The relationship between state and private action must be a strong and direct one. *See Blum v. Yaretsky*, 457 U.S. 991, 1004–5, 102 S.Ct. 2777, 2785–6, 73 L.Ed.2d 534 (1982) ("Mere approval or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.") (citations omitted). However, the Court has "found state action present in the exercise by a private entity of *powers traditionally exclusively reserved to the State.*" *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 352, 95 S.Ct. at 454 (emphasis added) (citing *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (municipal park); *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (election); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company town); *Nixon v. Condon*, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932) (election)). In this case, review must be directed at the Club rule. The Club rule as stated in the complaint is that "No one may purchase a home within the Borough of Pine Valley without being a member of the Pine Valley Golf Club." (Complaint at ¶ 13). A simple reading of the words of the rule indicates that it functions as a restriction on residential property use and occupation for the entire Borough. Such a restriction is analogous to an element of a zoning ordinance.

■ The Supreme Court discussed the advent of zoning restrictions in the landmark decision of *Village of Euclid v. Ambler Realty Co.*

> Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities.

272 U.S. 365, 386–87, 47 S.Ct. 114, 117–18, 71 L.Ed.2d 303 (1926). The power to zone is a police power of the state. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 4, 94 S.Ct. 1536, 1538–39, 39 L.Ed.2d 797 (1974). *See also Euclid*, 272 U.S. at 387, 47 S.Ct. at

---

**1.** In *Evans,* the Court reviewed the state action issue in the context of the City of Macon's role in maintaining a park. The City initially served as a trustee of the park property, which was devised under a private will designating that the park be racially segregated. *Evans*, 382 U.S. at 299, 86 S.Ct. at 488. Although the city had resigned its role as a trustee, the Court found that "mass recreation through the use of parks is plainly in the public domain," *Id.* at 302, 86 S.Ct. at 490, and viewed the administration of the park as state action. *Id.* Similarly, in *Marsh*, the Court found that the actions of a private company could not erode the constitutional privileges of free speech traditionally practiced on public streets. 326 U.S. at 509, 66 S.Ct. at 280. "A town may be privately owned and managed, but that does not necessarily allow the company to treat it as if it were wholly in the private sector." *Evans*, 382 U.S. at 299, 86 S.Ct. at 488 (*commenting on Marsh*).

118. Residential zoning regulations entail the development of a legislative classification of residents and their activities on residential property. *See Belle Terre,* 416 U.S. at 4, 94 S.Ct. at 1538–39. *See also* Annotation, *Supreme Court Views as to Constitutionality of Residential Zoning Restrictions,* 52 L.Ed.2d 863, 864 n. 1 (1976).

Residential zoning restrictions are promulgated and enforced pursuant to "Zoning Enabling Acts." *See e.g.,* Municipal Land Use Law, N.J.Stat.Ann. § 40:55D–1 *et seq.* (West 1988). *See also Southern Burlington County N.A.A.C.P. v. Mount Laurel,* 67 N.J. 151, 175, 336 A.2d 713, 725 (1975), *cert. denied and appeal dismissed,* 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975). Zoning is usually viewed by the courts as an exclusively legislative action. *See* Annotation, *Exclusionary Zoning,* 48 A.L.R. 3d 1210, 1215. Persons "aggrieved" by a zoning ordinance have a legal right to challenge the ordinance. *Id.* at 1216. Because the Club rule in question was not promulgated pursuant to a state enabling act, the procedural opportunity for challenge is entirely absent. However, in order to find state action, the court need not identify a statutory provision where a custom having the force of law is in evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 171–72, 90 S.Ct. 1598, 1615–16, 26 L.Ed.2d 142 (1970).

The Club rule in fact functions as a zoning ordinance even though the rule was neither promulgated nor enforced under enabling act procedures. The rule conditions residency in the Borough on membership in the Club. Because residential zoning is a power "exclusively reserved to the state," *Jackson v. Metropolitan Edison Co.,* 419 U.S. at 352, 95 S.Ct. at 454, this court finds that a private entity's rule, which functions as a residential zoning restriction for an entire Borough, is state action. At this stage of the litigation, the court has before it an extremely limited factual record. However, viewing the facts in the light most favorable to plaintiff and allowing for reasonable inferences to be drawn from those facts, plaintiff has made out a colorable allegation of state

action under the *Evans* and *Marsh* line of cases.

### D. Fourteenth Amendment—standard of review

Absent a fundamental right or suspect classification, the proper standard of review for both due process and equal protection challenges is the rational relation test. A higher level of scrutiny applies only when a suspect classification is employed or a fundamental right is implicated. *See Cleburne v. City of Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). Under this rational relationship test, the legislation must not be arbitrary or capricious and must be reasonably related to a legitimate state interest. *See Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254; *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

In this case, the Club rule classifies prospective homeowners in the Borough on the basis of Club membership. This classification would not appear to require heightened scrutiny under either due process or equal protection analysis. However, even if the lower standard is applied, plaintiff has made allegations which, on further development of the factual record, could support a finding that the classification scheme in question was arbitrary and was not rationally related to a legitimate state interest. Therefore, defendants' motion to dismiss plaintiff's due process and equal protection claims under the Fourteenth Amendment for failure to state a claim upon which relief may be granted is denied.

### III. ARTICLE IV, § 2 CLAIM

Plaintiff alleges that the restriction at issue violates the privileges and immunities clause of Article IV, § 2 of the United States Constitution. The purpose of the privileges and immunities clause is "to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute

is aimed." *Toomer v. Witsell*, 334 U.S. 385, 398, 68 S.Ct. 1156, 1163, 92 L.Ed. 1460 (1948). The Club rule at issue does not discriminate between residents and nonresidents. Therefore, defendants' motion to dismiss plaintiff's privileges and immunities claim for failure to state a claim under rule 12(b)(6) is granted.

## IV. STANDING

■ Defendants also argue that plaintiff does not have standing. Standing in an Article III court can only be obtained by a plaintiff who files a complaint which demonstrates compliance with the court's constitutional and prudential requirements. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). The constitutional requirements are a showing of " 'actual or threatened injury as a result of the putatively illegal conduct of the defendant,' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.' " *Id.* at 472, 102 S.Ct. at 758 (citations omitted). The prudential requirements are that: (1) the plaintiff must assert his own legal rights, (2) the grievance must be specific to plaintiff and not "generalized," and (3) the complaint must fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 474–75, 102 S.Ct. at 760 (citations omitted).

In applying the general principles of standing to the challenge of a restrictive zoning ordinance, the Supreme Court has held that:

> [A] plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm *him*, and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of "a real need to exercise the power of judicial review" or that relief can be framed "no

broader than required by the precise facts to which the court's ruling would be applied."

*Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975) (citation omitted).

In *Warth*, some of the plaintiffs who claimed to be low income persons and who lived outside the zoned town of Penfield, N.Y., asserted that a Penfield ordinance had the effect of excluding low and moderate income persons. *Id.* at 502–503, 95 S.Ct. at 2207. Each of those plaintiffs claimed to have made an unsuccessful effort to locate affordable housing in Penfield. *Id.* The Court found that the plaintiffs did not have a justiciable claim under the standing doctrine since the plaintiffs lacked a "present interest" in Penfield property. *Id.* at 504, 95 S.Ct. at 2207–08. Plaintiffs' claim was dependent on a third-party developer or builder constructing low income housing in Penfield. *Id.* at 505, 95 S.Ct. at 2208. The Court concluded that the complaint failed to allege facts showing a causal relationship between the ordinance and the plaintiffs' asserted injury. *Id.* at 507, 95 S.Ct. at 2209. Underlying this finding was the Court's assessment of the factual record, which indicated that the plaintiffs' "inability to reside in Penfield [was a] consequence of the economics of the area housing market, rather than of respondents' assertedly illegal acts." *Id.* at 506, 95 S.Ct. at 2209 (footnote omitted). Expressed in other terms, the ordinance was not the "sole" barrier to the plaintiffs' access to real estate or the "but for" cause of their injury. *See Comment, Standing to Challenge Exclusionary Zoning in Federal Courts*, 17 B.C. Indus. and Com.L.Rev. 347, 381, 403 (1976).

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Court found that standing existed for an individual nonresident challenging a zoning ordinance. *Id.* at 264, 97 S.Ct. at 562–63. The plaintiff, a resident of Evanston, Illinois, sought low rent housing in neighboring Arlington Heights. *Id.* The Metropolitan Housing Development Corporation (MHDC) had applied to Arlington

Heights for the rezoning of a 15–acre parcel on which to construct low income housing. That application was denied. *Id.* at 254, 97 S.Ct. at 557–58. The Court found that the plaintiff had standing and noted that, had the Court granted relief, there was a "substantial probability" that low income housing would be built. Moreover, the plaintiff's complaint was neither a generalized grievance nor was it dependent on speculation about third parties. *Id.* at 264, 97 S.Ct. at 562–63 (citations omitted). The Court concluded that the plaintiff had "adequately averred an 'actionable causal relationship' between Arlington Heights' zoning practices and his asserted injury." *Id.* (citing *Warth*, 422 U.S. at 507, 95 S.Ct. at 2209). The *Arlington Heights* Court also found that the MHDC had standing to assert the "right to be free of arbitrary or irrational zoning actions." *Id.* 429 U.S. at 263, 97 S.Ct. at 562 (citations omitted).

■ Defendants raise several factual arguments against plaintiff's standing in the case at bar. Among these are that plaintiff had no interest in any Borough property, nor did he have a firm offer to buy a Borough home. Defendants also note that the discussions regarding the home apparently took place in 1976, some ten years before the complaint was filed. Defendants offer these facts to support their argument that plaintiff has suffered no "injury," the first requirement for standing. However, defendants' arguments pose a "Catch–22" for plaintiff. It is arguable that it would have been absolutely futile for plaintiff to continue his attempt to buy a home in the Borough in light of the Club rule. Plaintiff's initial discussion with Ms. Perkins was allegedly discontinued because of the Club rule. Any homeowner (a Club member under the rule) would be forced to violate the Club rule in order to sell a home to a non-Club member. Even if plaintiff could purchase a home, it would be violative of the Club rule for plaintiff to lease the land upon which the home stood, absent his admittance to the Club. This court will not require that plaintiff undertake the futile act of negotiating an offer to purchase a home when he is barred as a non-Club

member from owning such a home. The complaint alleges that plaintiff pursued Club membership from 1976 through 1985. (Complaint at ¶¶ 16–18). Therefore, the complaint does not lack an allegation of direct injury merely because 10 years have passed since plaintiff's failed attempt to purchase a home in the Borough.

Plaintiff alleges a personal injury as a result of the effect of the Club rule. He alleges denial of an opportunity to purchase a home in the Borough of Pine Valley because he is not a member of the Pine Valley Golf Club. Withdrawal of the rule in question by defendants would provide part of the redress plaintiff seeks. Plaintiff's allegations indicate that the Club rule is prohibiting the possibility of his pursuing residency in the Borough. It appears on the face of the complaint that the Club rule, and no other cause, has created this barrier for plaintiff. Therefore, under *Warth* and *Arlington Heights*, plaintiff has standing to challenge the Club rule.

## V. STATE LAW CLAIMS

Plaintiff has brought pendent state law claims under the New Jersey Constitution, Article 1, ¶ 1 (natural and unalienable rights) and Article 8, § 3 (use of public monies) as well as a claim for the common law tort of interference with prospective economic advantage. Defendants seek dismissal of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Magee seeks dismissal of the claims against him on the basis of a lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2).

### A. Article 1 Claim

■ Plaintiff brings a cause of action under Article 1 of the New Jersey Constitution. In light of the court's earlier analysis of plaintiff's equal protection claim under the federal Constitution, the court finds that plaintiff states a cause of action under Article 1 of the New Jersey Constitution. *See Chamber of Commerce v. State,* 89 N.J. 131, 445 A.2d 353 (1982) (New Jersey Constitution at least as protective of civil rights as federal Constitution); *Abbott v. Burke,* 100 N.J. 269, 294, 495 A.2d 376, 389

(1985) (Article 1 embodies the concept of equal protection under the law). *See also McKenney v. Byrne*, 82 N.J. 304, 316, 412 A.2d 1041, 1047 (1980). Defendants' Club rule restricting residence in the Borough on the basis of Club membership must be shown to be "justified by an appropriate state interest" in order to pass muster under the New Jersey State Constitution. *Exxon Co. v. Board of Adjustment*, 196 N.J.Super. 183, 192–93, 481 A.2d 1172, 1177 (Law Div.1984); (citing *Taxpayer's Assn. of Weymouth Tp. v. Weymouth Tp.*, 80 N.J. 6, 37, 364 A.2d 1016, 1033 (1976)). Therefore, defendants' motion to dismiss plaintiff's Article 1 claim is denied.

### B. Article 8, Section 3 Claim

 Plaintiff brings a claim against defendants for misuse of public monies under paragraphs 2 and 3 of Article 8, section 3 of the New Jersey Constitution. Defendants challenge plaintiff's standing to bring such a claim. Plaintiff is a Pennsylvania resident, not a New Jersey taxpayer. While the cause of action is one under state law, Article III (federal constitutional) standing requirements still apply. *Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985); *Urban League of Essex County v. Township of Mahwah*, 147 N.J.Super. 28, 33, 370 A.2d 521, 524 (App.Div.1977), *certif. denied*, 74 N.J. 278, 377 A.2d 682 (1977).[2] Plaintiff's alleged injury does not pertain in any way to defendants' use of public monies. The Supreme Court has not allowed taxpayer suits in the absence of an alleged direct injury resulting from the enforcement of the taxing provision. *See United States v. Richardson*, 418 U.S. 166, 178, 94 S.Ct. 2940, 2947, 41 L.Ed.2d 678 (1974). *See also Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). Therefore, plaintiff's causes of action under Article 8 of the New Jersey Constitution are dismissed due to plaintiff's lack of standing.

**2.** *Cf. Urban League*, 147 N.J.Super. at 33–34, 370 A.2d at 523–24 (more liberal standing requirements to challenge zoning ordinances in state court); *see also* Note, *Standing to Challenge*

### C. Tortious Interference Claim

 The tort of interference with prospective economic advantage provides a remedy for those who suffer a business injury at the hands of a third party. *Leslie Blau Co. v. Alfieri*, 157 N.J.Super. 173, 384 A.2d 859 (App.Div.), *certif. denied*, 77 N.J. 510, 391 A.2d 523 (1978) (unlawful interference with real estate brokerage business). Plaintiff has failed to plead facts which demonstrate the "loss of an economic advantage" or of a "business economic advantage" or a "business injury." *See Schultze v. Chevron Oil Co.*, 579 F.2d 776, 777 (3d Cir.) *cert. denied*, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978) (sale of service station). Therefore, plaintiff's tortious interference claim is dismissed.

### D. Personal Jurisdiction

 The Club defendants assert that the claims against defendant Magee must be dismissed for lack of personal jurisdiction. The complaint alleges that Mr. Magee was manager of the Club at some or all of the times relevant to the complaint and that Mr. Magee personally informed plaintiff of the restrictive Club rule in 1976. (Complaint at ¶ 16). Mr. Magee's affidavit indicates only that he has "not lived or worked in the State of New Jersey since 1982." (Affidavit of Edward S. Magee, October 1, 1986 at ¶ 4). In order to carry out a managerial job at the Club, it is reasonable to infer that Mr. Magee would have had to regularly avail himself of the privilege of conducting business activities in the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Thus Mr. Magee invoked the "benefits and protections" of the laws of New Jersey. *Id.* Such purposeful activities give rise to sufficient "minimum contacts" with the forum state to establish this court's jurisdiction over defendant Magee. *See Adams v. Governor's Committee on Post Secondary Education*, 504 F.Supp. 30, 31–32 (E.D.Pa.

*Exclusionary Local Zoning Decisions: Restricted Access to State Courts and the Alternative Federal Forum*, 22 Syracuse L.Rev. 598, 607–10 (1971).

1980); *Minichiello Realty Assoc. v. Britt*, 460 F.Supp. 896, 899 (D.N.J.1978), *aff'd* 605 F.2d 1196 (3d Cir.1979). The motion to dismiss plaintiff's claims against defendant Magee for lack of personal jurisdiction is therefore denied.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's equal protection and due process claims under the Fifth Amendment is granted; defendants' motion to dismiss plaintiff's equal protection and due process claims under the Fourteenth Amendment is denied; defendants' motion to dismiss plaintiff's privileges and immunities claim under Article IV, § 2 is granted; defendants' motion to dismiss plaintiff's claim under Article 1 of the New Jersey Constitution is denied; defendants' motion to dismiss plaintiff's claim under Article 8 of the New Jerey Constitution is granted; defendants' motion to dismiss plaintiff's claim of tortious interference is granted; and defendants' motion to dismiss all claims against defendant Magee is denied.

An appropriate order will be entered.