John A. PLASKO, Sr., Administrator of the Estate of John B. Plasko, deceased, Plaintiff,

v.

The CITY OF POTTSVILLE, Dale Repp, and Various Unknown Officers of the City of Pottsville Police Department, Defendants.

Civ. A. No. 93–CV–5609.

United States District Court, E.D. Pennsylvania.

May 26, 1994.

Richard W. Kolosky, Allentown, PA, for plaintiff.

Robert G. Hanna, Jr., Philadelphia, PA, for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This civil rights action, brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and the Eighth and Fourteenth Amendments to the U.S. Constitution, arises out of the suicide of John B. Plasko while he was being held in a jail cell. Plaintiff's complaint also asserts supplemental state law claims. Plaintiff, John A. Plasko, Sr., seeks to recover damages resulting from the suicide of his son, John B. Plasko. On October 25, 1991, John B. Plasko hung himself with his belt in a cell at the Pottsville, Pennsylvania Police Station. Defendants have moved for dismissal of all plaintiff's claims under Fed.R.Civ.P. 12(b)(6).

## I. FACTUAL BACKGROUND

Plaintiff makes the following limited allegations in his complaint, which are essentially undisputed.[1] On October 25, 1991, the plaintiff's decedent, John B. Plasko, was arrested by defendants, various unknown Pottsville police officers, and incarcerated in a police department holding cell. Complaint, ¶ 9. Shortly after his arrest, John B. Plasko hung himself with his own pants belt which had been removed, but not secured, by defendant officers. Complaint, ¶ 13. At the time of Plasko's incarceration, the Pottsville Police Department maintained a safety policy requiring that the personal effects of all prisoners be removed prior to their incarceration. Complaint, ¶ 10. The Department, however, did not require that a prisoner's personal effects be secured thereafter. Id.

In the Complaint and Response to Defendants' Motion to Dismiss, plaintiff contends that defendants were "deliberately indifferent" to the rights, safety and life of John B. Plasko. Complaint, ¶ 18, 36, 54. Furthermore, plaintiff asserts that defendants should not have allowed Plasko to keep his belt as a device which could potentiate hanging or other self-inflicted harm. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 12, 14.

Plaintiff's six-count complaint is broad and rambling. In the jurisdictional allegations, plaintiff states that he brings this action "under Title 42 U.S.C. Sections 1983, 1985 and 1986, as well as the Eighth and Fourteenth Amendments to the United States Constitution." Complaint, ¶ 1. The named defendants are the City of Pottsville, Chief of Police Dale Repp, and various unknown officers of the City of Pottsville Police Department.[2] Plaintiff also asserts a state law survival action and brings state law claims of wrongful death against above defendants. Complaint, ¶ 27, 31, 45, 49, 63, 67.

## II. MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir.1987). The Rule 12(b)(6) motion does not attack the merits of the case, but merely challenges the pleader's failure to state a claim properly. 5a C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1364, at 340 (1990). In deciding a 12(b)(6) motion, the court must determine whether plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in the complaint at "face value" and construe them in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Wisniewski v. Johns–Manville Corp., 759 F.2d 271 (3d Cir.1985).

---

1. The court significantly notes that plaintiff did not claim nor offer any facts suggesting that decedent had a medical or personal history of mental problems or suicidal tendencies. Plaintiff failed to do so even though this evidence is obviously held by plaintiff.

2. Plaintiff states that the identities of the officers involved in Plasko's arrest and custody are expected to come to light through discovery in this case.

Generally, the complaint must set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 179 (3d Cir.1988). The court can dismiss plaintiff's complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80, 84 (1957)). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Id.*

In addition to the above general requirements, courts have set forth heightened specificity requirements for pleadings in Section 1983 claims. The dual policy concerns of protecting state officials from a deluge of frivolous claims and providing state officials with sufficient notice of the claims asserted to enable preparation of responsive pleadings have led courts to impose on Section 1983 claims the additional pleading requirement that the "complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." *Ross v. Meagan,* 638 F.2d 646, 650 (3d Cir.1981); *see also Frazier v. Southeastern Pennsylvania Transportation Authority,* 785 F.2d 65, 67 (3d Cir.1986); *Rotolo v. Charleroi,* 532 F.2d 920, 922 (3d Cir.1976).

The heightened pleading requirements for Section 1983 claims, however, do not alter the general standard for ruling on motions to dismiss under Rule 12(b)(6). *See Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir. 1986). As the Third Circuit stated in *Frazier,* "the crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." 785 F.2d at 68; *accord District Council 47, American Federation of State, County and Municipal Employees v. Brad-*

*ley,* 795 F.2d 310, 313 (3d Cir.1986). The Third Circuit has routinely held that complaints comply with this standard if they allege the specific conduct violating the plaintiff's rights, the time and place of that conduct, and the identity of the responsible officials. *See Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) (*"Colburn I "*). A plaintiff is not required to provide either proof of her claims or "a proffer of all available evidence" because in civil rights cases "much of the evidence can be developed only through discovery" of materials held by defendant officials. *Frazier,* 785 F.2d at 68, *quoted with approval in District Council 47,* 795 F.2d at 313.

## III. DISCUSSION

### A. Section 1983 Claims

#### 1. *Individual Defendants.*

■ The issue presented here is whether the facts surrounding decedent's suicide, as alleged in plaintiff's complaint, give rise to a viable claim under 42 U.S.C. § 1983. The court is not without some guidance in making its determination. The Third Circuit has clearly held that, under the appropriate circumstances, a pretrial detainee's suicide can give rise to a Section 1983 violation as an infringement of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1067 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992); *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1023 (3d Cir.1991) (*"Colburn II "*); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 464 (3d Cir.1989); *Freedman v. City of Allentown,* 853 F.2d 1111, 1115 (3d Cir.1988); *Colburn I,* 838 F.2d at 667–70.

The starting point for our analysis is the Supreme Court's holding in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), explaining that "the Due Process Clause is simply not implicated by a *negligent* act of an official." *Id.* at 328, 106 S.Ct. at 663 (emphasis in original). This is so because "Section 1983 should not be con-

strued to create a "'font of tort law to be superimposed upon whatever systems may already be administered by the States."'" *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147 (7th Cir.), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983), *quoting Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (*overruled on other grounds, Daniels v. Williams*, 474 U.S. at 330, 106 S.Ct. at 664), *quoting Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The plaintiff in a Section 1983 cause of action must prove that the defendant was more than merely negligent.

▅▅▅ It is proper to consider prison suicide cases in light of the standards set under the Eighth Amendment for cases involving prison officials' denial of medical attention to inmates.[3] It is true that "a prison custodian is not the guarantor of a prisoner's safety," *Freedman v. City of Allentown*, 853 F.2d at 1115, and that a prisoner determined to take his or her life will probably find a way to do so, even in the face of the most exhaustive precautions. It is, however, equally true that a suicidal prisoner is in need of psychiatric care, and prison custodians may not be deliberately indifferent to this need, pursuant to the Supreme Court's standard in *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (a convicted prisoner charging that a prison official has denied him adequate medical treatment must prove that the official was "deliberate[ly] indifferen[t] to [his] serious medical needs").

▅▅▅ At least three circuits, including our own Third Circuit, have specifically held that custodial officials may be liable in damages for the suicide of a pretrial detainee if they acted with "deliberate indifference" to the individual's psychological needs.[4] *Col-*

3. Plaintiff also relies on the Eighth Amendment directly as a basis for claiming redress under Section 1983. It is beyond dispute, however, that the Eighth Amendment does *not* apply to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977). Eighth Amendment protections do not attach until after conviction and sentence. *Id.* ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") Therefore, although we analogize to the legal analysis conducted under Eighth Amendment jurisprudence, plaintiff in this case cannot assert violations of the Eighth Amendment as a constitutional right he seeks to vindicate in his Section 1983 action.

We also note that in light of plaintiff's right to proceed under Section 1983 for any constitutional violations that can be established, it would be a redundant and wasteful use of judicial resources to permit the adjudication of both direct constitutional and Section 1983 claims. *See Rogin v. Bensalem Township*, 616 F.2d 680, 686–87 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

4. The Third Circuit has recently ruled, in an *in banc* opinion, that in a Section 1983 action for violation of substantive due process "the appropriate standard by which to judge the [government officers'] conduct is a 'shocks the conscience' standard." *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir.1994) (*in banc*). In *Fagan*, the Third Circuit explained that it was altering its standard for substantive due process

violations in order to comply with the recent U.S. Supreme Court decision in *Collins v. City of Harker Heights*, —— U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). According to the *in banc* majority in *Fagan*, the Supreme Court in *Collins* redefined the relevant inquiry when plaintiffs rely on substantive due process as the basis of a constitutional tort. *Fagan v. City of Vineland*, at 1308. Although the Third Circuit adopted a "shocks the conscience" test pursuant to *Collins*, it failed to provide the district courts with any guidance as to how this new test should be applied. Instead, the Third Circuit only confessed that the new standard would entail an "amorphous and imprecise inquiry." *Id.* at 1308.

Fortunately, this court is not confronted with the formidable task of trying to frame a "shocks the conscience" test. We are not faced with this prospect because at the same time the Third Circuit was introducing its new "shocks the conscience" standard, it decided not to disavow its earlier decisions applying a reckless disregard/deliberate indifference inquiry to those cases in which a plaintiff is in custody. Therefore, we may continue to follow the well-developed series of cases involving detainees who commit suicide. *See Simmons v. City of Philadelphia*, 947 F.2d at 1067; *Colburn II*, 946 F.2d at 1024; *Williams v. Borough of West Chester, Pa.*, 891 F.2d at 464 & n. 10; *Colburn I*, 838 F.2d at 668. The *in banc* majority in *Fagan* justified its retention of the deliberate indifference standard in these cases, by stating the following:

> [The reckless disregard] threshold of liability is appropriate in custody cases because the government has restricted an individual's liberty and thereby increased his or her vulnerability

*burn I*, 838 F.2d at 668 ("[A] detainee is entitled under the Due Process Clause of the Fourteenth Amendment to, at a minimum, no less protection for personal security than that afforded convicted prisoners under the Fourteenth Amendment and no less a level of medical care than that required for convicted prisoners by the Eighth Amendment."); *Freedman v. City of Allentown*, 853 F.2d at 1115; *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1187 (5th Cir.1986); *Roberts v. City of Troy*, 773 F.2d 720, 725 (6th Cir.1985). The Third Circuit, in *Colburn I*, elaborated on the standard of liability to be applied in prison suicide cases. There, the court held that "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Colburn I*, 838 F.2d at 669.

This standard was later reduced to a three factor test in *Colburn II*. In that case, the Third Circuit ruled that a plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a "particular vulnerability to suicide," (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability. *Colburn II*, 946 F.2d at 1023.[5]

To survive a motion to dismiss, therefore, plaintiff's complaint must do more than merely allege, in conclusory fashion, that the defendants' conduct "constitute[d] gross negligence and/or a deliberate indifference" to the detainee's rights. *See* Complaint, ¶ 18. Instead, the plaintiff must plead facts which, when viewed in a light most favorable to plaintiff, support a claim for a constitutional violation, rather than simply a claim sounding in negligence. *See Freedman v. City of Allentown*, 853 F.2d at 1115. Thus, "when the *factual scenario* presented by plaintiff suggests that defendants [knew or] should have known that the prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal." *Id.* (emphasis added).

In the instant case, plaintiff simply asserts in a conclusory fashion that Chief of Police Repp and various unknown officers of the Pottsville Police Department[6] acted with "deliberate indifference" to the psychological needs of the decedent. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, p. 12. Plaintiff, however, fails to craft any factual bas-relief that would allow us to find or infer that such a conclu-

---

to abusive governmental action or to private harm. Although we have not articulated the issue in this way, it can be fairly said that the judicial conscience is shocked by a governmental employee's reckless disregard of the constitutional rights of an individual in custody.
*Fagan v. City of Vineland*, at 1306.

Because we are confronted here with an alleged violation of substantive due process by custodial officers, if we find that these officers were deliberately or recklessly indifferent to the safety and life of the decedent, then we, in effect, also find that this conduct "shocks the conscience."

5. In *Colburn I*, the Third Circuit concluded that police officers are obligated under the Fourteenth Amendment not to act with "reckless indifference." 838 F.2d at 669. However, the Third Circuit has not attempted to draw distinctions among terms like "reckless indifference," "deliberate indifference," "gross negligence," or "reckless disregard" in this context. *See id.* at 670. Most recently, the Third Circuit declined to do so again in *Colburn II*. 946 F.2d at 1024. The Third Circuit has said only "[i]t will suffice for

present purposes to note that a level of culpability higher than a negligent failure to protect from self-inflicted harm is required and that this requirement is relevant to an evaluation of the first two *Colburn I* elements as well as the third." *Id.* We, therefore, will use the term "deliberate indifference" to refer to the type of conduct or state of mind described by the above terms collectively.

6. The complaint does not expressly state whether the claims against these defendants are made in their individual or official capacity. We will construe plaintiff's claims against the individual officers and Chief Repp as claims brought against them in their individual capacity since claims against them in their official capacity are simply considered claims against the municipality itself. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). Since plaintiff also brings claims against the City of Pottsville, we read the Complaint in a way that allows plaintiff to assert separate claims against the individual officers and the City. Otherwise, plaintiff's claims would be redundant.

sion is possible here. Plaintiff does not allege any facts concerning the mental history of the decedent nor does he provide any reason for this court to infer that defendants knew or should have known the decedent posed a particular risk of suicide, and that they disregarded this risk.

The line between what constitutes mere negligence and what constitutes deliberate indifference for purposes of a constitutional claim arising under Section 1983 can be difficult to draw. Certainly, a denial of a reasonable request for medical treatment, an intentional refusal to provide known needed medical care, or a purposeful delay in providing this care have all been held to constitute deliberate indifference. *See Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). On the other hand, allegations amounting only to malpractice or negligence have consistently been held not to raise issues of constitutional import. *Id.; see also Estelle v. Gamble,* 429 U.S. at 106 and n. 14, 97 S.Ct. at 292 and n. 14.

In light of the sparse facts illuminated by the complaint in this case, we do not know, at this time, whether defendants possessed any knowledge of the decedent or should have known something that would have caused them to take different affirmative steps, such as taking away his belt, to prevent any self-inflicted harm. We do not know anything about the decedent's behavior in the presence of the officers that might lead us to infer that the officers were deliberately indifferent to decedent's needs. Absent these kind of circumstances, the officers were not required to take decedent's belt or to monitor him more carefully. In fact, plaintiff admits that the officers properly removed decedent's belt after his arrest pursuant to general practice at the Department. *See* Complaint, ¶ 13.

The bare fact that the officers subsequently did not secure the belt from decedent while he was in the holding cell, without any reason to believe that decedent was potentially suicidal, does not amount to a level of culpability higher than mere negligence, which is not actionable under Section 1983.

*See e.g., Williams v. Borough of West Chester, Pa., supra,* 891 F.2d 458 (officers' failure to follow general practice of removing detainee's belt or to adhere to regulation that requires thirty-minute checks on prisoners was simply negligent conduct); *Freedman v. City of Allentown, supra,* 853 F.2d 1111 (officers' failure to recognize detainee's scars as attempted suicide marks and to take appropriate action at most constituted negligence); *Williams v. City of Lancaster,* 639 F.Supp. 377, 383–84 (E.D.Pa.1986) (Judge Huyett concluded that the failure to check on decedent for forty-five minutes, in violation of a rule requiring that prisoners be checked every thirty minutes, was mere negligence under the circumstances); *see also State Bank of St. Charles v. Camic,* 712 F.2d at 1146 (failure to check cells in accordance with established procedures does not evince deliberate disregard). With the benefit of 20/20 hindsight, it would have been wise for the officers to have taken the precaution of keeping decedent's belt from him while he was in the holding cell; however, the failure to take decedent's belt, absent circumstances indicating detainee's psychological needs, was at most only a negligent omission.

We, therefore, must find the complaint in this case wholly lacking in specific facts to support its conclusory claim that Chief Repp and the individual Pottsville officers acted with "deliberate indifference" to the safety of the decedent in violation of his due process rights under the Fourteenth Amendment. The complaint as it stands, therefore, must be dismissed as to the individual defendants on this ground.

### 2. Independent Municipal Liability.

■ Plaintiff also brings Section 1983 claims against the City of Pottsville. *See* Complaint, Counts I and II. We find, following our discussion above, that these claims are also deficient. A municipality can be sued directly under Section 1983 if action pursuant to a municipal policy or custom causes a constitutional tort. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Fagan v. City of Vineland,* 22 F.3d 1296, 1303, 1994 U.S.App.

LEXIS 9498, at *16 (3d Cir.1994); *Simmons v. City of Philadelphia*, 947 F.2d at 1063. A municipality, however, cannot be held liable solely because it employs a tortfeasor. There is no *respondeat superior* liability under Section 1983. *Monell v. New York City Department of Social Services*, 436 U.S. at 691, 98 S.Ct. at 2036. "Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38.

■ Plaintiff alleges in his complaint that the City of Pottsville had violated decedent's constitutional rights by (1) failing to require that detainees' personal effects be removed and secured prior to incarceration; (2) enacting a safety policy requiring that the personal effects of detainees be removed but *not* secured prior to incarceration; and (3) failing to train officers to ensure that safety policies, such as requiring that the personal effects of detainees be removed and secured, are properly carried out. In *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court, in a decision relevant to both plaintiff's municipal policy or custom and failure to train theories of the City's liability, held that a municipality's failure to train its police officers can give rise to a constitutional violation only when that failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.*, 489 U.S. at 388, 109 S.Ct. at 1204.

The Third Circuit addressed the issue of independent municipal liability in *Simmons v. City of Philadelphia*, 947 F.2d at 1042, which also involved a detainee who committed suicide. In that case, the jury found that the turnkey, who was responsible for supervising the decedent, had not violated the decedent's due process rights, but it found that the city had done so through a policy of improper training. On appeal, the Third Circuit upheld these verdicts, reasoning that the verdicts were consistent because the city's policymakers, rather than the turnkey, were the city actors whose primary liability must be established in order to hold the city liable under Section 1983 for a failure to train. *Id.* at 1063.

Although we acknowledge that plaintiff can fail to state a cause of action under Section 1983 as to individual municipal employees while properly pleading a case with respect to the municipality directly, we nonetheless find that this action cannot be maintained against the City on the basis of the bare allegations that Pottsville's safety policies and failure to adequately train officers amount to deliberate indifference to the needs of a detainee. In *Colburn I*, in deciding whether plaintiff properly stated a claim against the municipality for inadequate safety policies or failure to train in a prison suicide case, the Third Circuit recalled the two-pronged test it first enunciated in *Chinchello v. Fenton*. 838 F.2d at 673 (*citing* 805 F.2d 126, 134 (3d Cir.1986)); *see also Freedman v. City of Allentown*, 853 F.2d at 1117 (reiterating the statement made in *Chinchello* outlining the two-pronged test forming the basis for municipal liability under Section 1983). In *Chinchello*, the Third Circuit suggested that at a minimum such liability could be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." 805 F.2d at 133 (footnote omitted).

In *Colburn I*, the Third Circuit further explained that in order to state a Section 1983 claim against a municipality, arising from a jailhouse suicide and premised on the failure to provide employees with adequate training, a plaintiff must allege a policymaker's knowledge of a constitutionally violative incident or pattern of incidents arising from inadequate training. 838 F.2d at 673. *See also Freedman v. City of Allentown*, 853 F.2d at 1115–16 (discussing *Colburn's* requirements for stating a Section 1983 claim based on a jailhouse suicide and alleging violations of constitutional rights arising from a municipal policy or custom and a failure to train).

■ In this case, the complaint is silent as to whether responsible policymakers had contemporaneous knowledge of the events leading up to decedent's suicide, or even

whether decedent gave any prior indication at all to suspect that he needed special medical care. Moreover, there are no allegations that policymakers had knowledge or reason to know of prior suicides in the City's jails, or of the alternatives for preventing them. In order for this court to find the City of Pottsville liable for the death of detainee, plaintiff must include in the complaint some allegations indicating that responsible policymakers either deliberately chose not to pursue a policy of securing the personal effects of detainees prior to incarceration or acquiesced in a long-standing policy or custom of inaction in light of a prior pattern of similar incidents. *See Simmons v. City of Philadelphia,* 947 F.2d at 1064. The lone fact that the City maintained a policy of removing but not securing the personal effects of a pretrial detainee, in light of the plaintiff's failure to allege that the officers' had reason to know that decedent posed a suicide risk, can at most amount to negligence, which falls short of the threshold for stating a Section 1983 claim.[7]

As a predicate to maintaining his concomitant theory that the City violated decedent's rights by means of a deliberately indifferent failure to train, plaintiff must similarly have alleged that such policymakers, likewise knowing of a prior pattern of similar incidents, either deliberately chose not to provide officers with training in suicide prevention or acquiesced in a longstanding practice or custom of providing no training in this area. *Id.* Mere conclusory allegations, such as here, that the defendants failed to properly train are not enough to support a constitutional claim.

7. In *Williams,* the Third Circuit held that plaintiff's claims that the municipality had violated the decedent's rights by failing to require the removal of detainee's belts, to install visual surveillance equipment in the cell block area, to allocate funds for the treatment of detainees with mental health problems, and to train officers in the handling of such detainees, at most amounted to allegations of negligence. 891 F.2d at 467 n. 14. Although *Williams* was decided at the summary judgment stage, the plaintiff in that case, unlike here, had made the additional allegations in his pleadings that the responsible policymakers had contemporaneous knowledge of the events leading up to detainee's suicide or knowledge of a prior pattern of similar incidents.

### 3. Proposed Action.

Despite all of the above findings with respect to plaintiff's Section 1983 claims against Chief Repp, other individual officers and the City of Pottsville, we are fully aware that if we dismiss plaintiff's complaint, we will be depriving plaintiff of his "day in court." The Third Circuit has consistently held that when a plaintiff has filed a complaint under Section 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint. *See Darr v. Wolfe,* 767 F.2d 79 (3d Cir.1985); *Ross v. Meagan,* 638 F.2d at 646. Therefore, while the deficiencies in plaintiff's complaint fully justify dismissal, we will not dismiss the complaint with prejudice at this stage. The Third Circuit has cautioned us that "failure to permit amendment of a complaint for want of specific allegations constitutes an abuse of discretion." *Ross v. Meagan,* 638 F.2d at 650.

Accordingly, plaintiff's Section 1983 claims against both the individual officers and the City of Pottsville will be dismissed without prejudice to plaintiff's right to file an amended complaint, if he can, setting forth the proper factual information necessary to make out a valid Section 1983 claim as described in this Memorandum. Plaintiff's direct constitutional claims, however, will be dismissed with prejudice at this time.

### B. Section 1985 and 1986 Claims

Plaintiff also brings claims under 42 U.S.C. §§ 1985 and 1986. 42 U.S.C. § 1985(3)[8] provides, in relevant part:

*Id.* at 463. Because the Third Circuit agreed with the district court's findings that plaintiff presented no evidence from which a reasonable jury could find that these allegations were true, the court affirmed the grant of summary judgment.

8. Although plaintiff does not specify which provision of Section 1985 forms the basis for his action, we will construe his claims as brought under Section 1985(3) which deals with the deprivation of a person's rights or privileges. Section 1985(1) concerns conspiracies to obstruct officers from performing their duties and Section 1985(2) pertains to conspiracies to intimidate

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

\* \* \* \* \* \*

in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to state a cause of action for violations of this section, the following must be alleged: (1) a conspiracy by the defendants; (2) designed to deprive plaintiff of the equal protection of the laws; (3) the commission of an overt act in furtherance of that conspiracy; (4) a resultant injury to person or property or a deprivation of any right or privilege of citizens; and (5) defendants' actions were motivated by a racial or otherwise class-based invidiously discriminatory animus. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971); *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 430 (3d Cir.1988) (racial or other prohibited animus necessary element of Section 1985(3) claim; Section 1986 claim companion to Section 1985(3) claim); *Pratt v. Thornburgh,* 807 F.2d 355, 357 (3d Cir.1986).

In this case, plaintiff has wholly failed to allege the requisite elements of the civil rights claim he asserts. However, as stated above, in fairness, we will grant plaintiff leave to file a more definite amended complaint, if he can, which properly alleges that defendants were motivated by a racial or otherwise class-based invidiously discriminatory animus, along with the other requisite elements of a Section 1985(3) conspiracy claim. We will, therefore, dismiss plaintiff's Section 1985(3) claim and Section 1986 [9] claim without prejudice.

## C. State Law Claims

Because plaintiff cannot go forward with his federal claims as currently pleaded, there is no need to address the merits of the plaintiffs' state law claims.[10] Under these circumstances, the decision to entertain or dismiss the pendent state law claims is within our discretion. Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Weaver v. Marine Bank,* 683 F.2d 744, 746 (3d Cir.1982). Accordingly, we will decline to exercise supplemental jurisdiction over the plaintiff's state law claims and will dismiss them without prejudice to plaintiff's right to reassert them as supplemental claims in an amended complaint in this court, or in state court if no amended complaint is filed in this court.

## IV. CONCLUSION

Upon consideration of Defendants' Motion to Dismiss and for the reasons set forth in the foregoing Memorandum, Defendants' Motion to Dismiss is granted. Plaintiff's direct constitutional claims are dismissed with

witnesses or otherwise obstruct justice. *See* 42 U.S.C. § 1985(1), 1985(2). It is clear that Section 1985(3) is the only applicable section in this action.

**9.** Plaintiff also asserts claims under 42 U.S.C. § 1986, as the companion statute to 42 U.S.C. § 1985. Because no claim can be maintained under Section 1986 unless a cause of action has been established under Section 1985, *see Rogin v. Bensalem Township,* 616 F.2d at 696, we must also, at this time, dismiss plaintiff's Section 1986

claims without prejudice to refile the same if more specific factual allegations can be made.

**10.** 28 U.S.C. § 1367(c) reads in relevant part:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

\* \* \* \* \* \*

(3) the district court has dismissed all claims over which it has original jurisdiction.

**1268**

prejudice, and all of Plaintiff's other claims in this action are dismissed in their entirety, without prejudice to the right of the Plaintiff to reopen this matter by filing an amended complaint within sixty (60) days following the issuance of this Order. We will also grant Plaintiff limited discovery if necessary, for the sole purpose of filing an amended complaint.

An appropriate order follows.

### ORDER

AND NOW, this 26th day of May, 1994, upon consideration of Defendants' Motion to Dismiss, filed on April 12, 1994, as well as Plaintiff's Response and Reply thereto, filed on April 29, 1994, it is hereby **ORDERED** that Defendants' Motion is **GRANTED. IT IS FURTHER ORDERED** as follows:

1. Plaintiff's direct constitutional claims in the above-captioned cause of action are **DISMISSED,** with prejudice;

2. All other claims of Plaintiff in this action shall be, and hereby are, **DISMISSED,** without prejudice to the right of the Plaintiff to re-open this matter and reassert any or all of these claims by filing an Amended Complaint within sixty (60) days of the issuance of this Order.

3. Plaintiff is hereby **GRANTED** an opportunity to conduct limited discovery if necessary, for the sole purpose of filing an Amended Complaint;

4. After sixty (60) days have passed from the issuance of this Order, this Order will act as a dismissal, with prejudice, of all federal claims not re-asserted in an Amended Complaint as provided above. If no Amended Complaint is filed, Plaintiff may re-assert all state law claims in state court.